STATE BANK OF GOTHENBURG, APPELLEE, V. T. L. CAR-
ROLL ET AL., APPELLANTS.

FILED APRIL 23, 1908. No. 15,137.

1. **Appeal: RULINGS: REVIEW.** This court will not review the ruling
of the district court permitting a third party to be substituted
in lieu of the original plaintiff, where no exception has been
taken to such ruling.

2. **Limitations of Actions: PARTIES: SUBSTITUTION.** The substitution
of a third party for the original plaintiff in an action is not the
commencement of a new action, and the statute of limitations is not
available as a defense, if the original action was begun before the
bar of the statute was complete.

3. **Checks: PRESENTATION: DELAY.** Mere delay on the part of the
holder of a check in presenting it for payment to the bank on
which it is drawn will not release the drawer and indorser of
the check from liability, unless such delay caused a loss.

4. **Evidence** examined and set out in the opinion, *held* to require a
verdict for the plaintiff.

5. **Appeal: INSTRUCTIONS: REVIEW.** This court will not review any
alleged errors in the giving and refusing of instructions, where
the evidence compelled the verdict which was rendered.

APPEAL from the district court for Dawson county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*E. A. Cook* and *John A. Sheean*, for appellants.

*Warrington & Stewart* and *H. M. Sinclair, contra.*

GOOD, C.

This action was originally instituted by H. V. Temple,
as receiver of the State Bank of Gothenburg, against
Thomas L. Carroll and the Union Pacific Railroad Com-
pany to recover the amount of a check drawn upon the
People's State Bank of Gothenburg by Carroll in favor of
an agent of the Union Pacific Railroad Company, which
had been indorsed and transferred by the railroad com-
pany to the State Bank of Gothenburg. The People's

State Bank of Gothenburg closed its doors before the check was presented to it for payment. Subsequently, the State Bank of Gothenburg passed into the hands of a receiver, who instituted this action to recover upon the check. Answers were filed and a trial had, resulting in judgment in favor of the defendants. This judgment of the district court was reversed by this court in *Temple v. Carroll*, 75 Neb. 61. After the cause was remanded to the district court, the State Bank of Gothenburg was substituted as plaintiff in the action, and filed an amended and substituted petition. Defendants answered separately. Carroll pleaded the statute of limitations, denied that the plaintiff had succeeded to the rights of Temple, receiver, and averred that at the time the check was given he had funds in the bank upon which it was drawn more than sufficient to pay the same, and alleged that plaintiff was negligent in failing to present the check to the bank upon which it was drawn until after it had suspended payment, and that by reason of such negligence he was exonerated from liability upon the check. The defendant railroad company's answer was substantially the same, except that it did not deny the right of the plaintiff to be substituted for the original plaintiff. Plaintiff replied to both answers with a general denial. A trial resulted in a verdict and judgment for the plaintiff. The defendants have appealed.

The principal grounds for reversal relied upon by the appellants are: First, that plaintiff can not maintain the action as a substituted plaintiff; second, the statute of limitations; third, the insufficiency of the evidence to sustain the verdict; fourth, alleged error in the instructions.

With reference to the first question, the record shows that upon the 8th day of October, 1906, the State Bank of Gothenburg, upon application to the court, was given leave to be substituted as plaintiff in the action in the place of H. V. Temple, receiver, and to file a petition in the cause. Defendants were each given leave to file a

separate answer thereto. There is nothing in the record to show what evidence or reason was given to the court for substituting the bank in place of the receiver as plaintiff in the action. It was conceded on the oral argument, however, that the receiver had been discharged, and the bank had resumed its functions as a banking institution. But appellants insist that it is essential that the record should show some ground or some reason for making the substitution, and that in the absence of such a showing the plaintiff cannot maintain the action. When the record is silent, the presumption obtains in favor of the regularity of the court's procedure, and that a proper and sufficient showing was made. As no exception was taken to the order permitting the substitution, this court will not review the ruling of the court thereon.

The plea of the statute of limitations was based upon the theory and assumption that the filing by the substituted plaintiff of an amended and substituted petition was the commencement of a new action, and that, more than five years having elapsed prior to the filing of such petition, the action was barred. It is conceded that the original action was begun previous to the running of the statute. We think the rule is generally well settled that the substitution of one party plaintiff for another in a pending action is a continuation of the original rather than the commencement of a new action. It is the same cause of action, only another party has succeeded to the rights of one of the litigants, and in our practice such party may be substituted as the real party in interest in lieu of the one who commenced the action. Since the statute of limitations had not run at the commencement of the original action, it follows that it can be no defense in this action.

The evidence discloses that on the afternoon of the 27th day of May, 1901, the Union Pacific Railroad Company received the check in controversy in payment of a freight bill. Through its agent the check was indorsed and transferred to the plaintiff after banking hours on

that day, and the agent received Omaha exchange in payment of the check. The usual banking hours in Gothenburg were from 9 A. M. to 4 P. M. The evidence also tends to show that the banks sometimes opened a little earlier and kept open a little later, at least for the transaction of some lines of business. On the following morning Carlson, the president of the State Bank, before banking hours, learned that the state bank examiner was in Gothenburg, and he had some reason to believe that the People's State Bank might be in financial difficulties. Shortly after 8 o'clock Carlson went to his own bank, and about 8:30 took the check in question, and went to the People's Bank to present it for payment. That bank was not then open. He then went to a barber shop, and later returned to the People's Bank to present the check. He claims that it was about 9 o'clock when he returned. The evidence of defendants tends to show that it was about 10 o'clock. At this time payment of the check was refused, and Carlson was informed that the bank was under the control of the state bank examiner. Carlson did not return to his own bank from the time he left it at about 8:30 until after he had been refused payment of the check. During Carlson's absence from his bank an employee of the People's Bank, under the direction of the state bank examiner, took certain checks held by that bank and drawn upon Carlson's bank to the latter bank, and received the money thereon. At the same time he made inquiry as to whether the State Bank held any checks drawn against the People's Bank. The employee at the State Bank, not having any knowledge of the check in the hands of its president, informed the representative of the People's Bank that it had no checks against it. The evidence shows that it was the usual custom of the banks to "clear" each day between the hours of 3 and 4 in the afternoon. The appellants contend that, if the president of the plaintiff bank had left this check in the State Bank, it would have been paid by the representative of the People's Bank when the checks

were presented by him for clearing, or that, if the president had notified the other employees of the State Bank that he had the check, it would have been paid by the People's Bank out of funds then in its possession. Under this state of affairs, the appellants claim that the appellee was negligent, and that by reason of its negligence the check was not paid, and, therefore, they should be relieved of any liability. Carroll at the time had a much larger sum on deposit in the People's Bank than the amount of his check. It is conceded that the check has not been paid, and the appellants are liable thereon, unless they are relieved by some act of negligence on the part of the plaintiff. Let us analyze the evidence and see whether any negligence exists. In the first place, the check could not have been presented on the 27th day of May, because it was not received until after banking hours. It being the usual custom of the banks to clear between 3 and 4 o'clock in the afternoon, plaintiff could not anticipate, and had no reason to anticipate, that any representative of the People's Bank would attempt to clear with it in the early forenoon. Under these circumstances, it could not, to our minds, be considered an act of negligence on the part of plaintiff for its president to take the check out of the bank. It does appear that he was using due diligence to present the check promptly to the People's Bank, and that he was there knocking at the door before the usual time of opening. According to his testimony, he was there at the usual time of opening and gained admission, but did not obtain payment. But, taking the evidence most unfavorable to the plaintiff, he did present the check as early as 10 o'clock, and was refused payment. Under these circumstances, we think the evidence would not sustain any charge of negligence. But, beyond this, the rule of law is well recognized that, to predicate a right of recovery or defense upon the negligence of another, such negligence must be the proximate cause of the injury. The evidence in this case does not show that, if the check had been in the plaintiff bank

when the representative of the People's Bank presented checks against it, it would have been paid. We think the inference is to the contrary, because the evidence shows that the employee of the People's Bank went to the plaintiff bank pursuant to the directions of the bank examiner, who was then in charge of the People's State Bank. He was collecting the assets that belonged to the People's Bank. He certainly had no authority and no right to pay out the funds of the bank after he had taken charge. He would have no right to prefer one creditor over another, and we cannot assume that he would have done so. Again, the evidence does not show that the People's Bank was ever open for business or ever paid a check or demand upon it after the time the check came into the possession of the plaintiff. Under these circumstances, even if it should be conceded that the plaintiff was negligent, the appellants in this case were not in anywise injured thereby. Under this evidence, we think that only one verdict could have been properly rendered, and that was in favor of the plaintiff in the action. The evidence is not only sufficient to sustain the verdict, but is such as to preclude any other verdict.

In this view of the case, it is unnecessary to consider any instructions that may have been given. Whether erroneous or not, they were not prejudicial. It follows that the judgment of the district court should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.