PAULETTE GENTHON, SPECIAL ADMINISTRATOR OF THE ESTATE OF VICTORIA MULDREW, DECEASED, APPELLEE, v. MICHAEL B. KRATVILLE, INDIVIDUALLY AND DOING BUSINESS AS TERRY & KRATVILLE, APPELLANT.

701 N.W.2d 334

Filed July 1, 2005.   No. S-04-350.

Jerry W. Katskee, of Katskee, Henatsch & Suing, for appellant.

Jerry Alexander, Sara Larson, and Henry C. Rosenthal, Jr., of Alexander & Associates, P.C., L.L.O., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

Donald Muldrew's mother, Victoria Muldrew (Victoria), was admitted to a nursing home and died shortly thereafter. Muldrew retained Michael B. Kratville to represent his family in a wrongful death action against the nursing home based on medical negligence. After Kratville withdrew from the case, Muldrew filed a defective pro se wrongful death petition. The wrongful death petition was eventually dismissed for failure of service within the statutory period. Ultimately, the special administrator of Victoria's estate brought a legal malpractice claim against Kratville, claiming that his negligence resulted in the loss of the estate's wrongful death claim against the nursing home. A jury found in favor of the estate, and Kratville appeals.

FACTUAL AND PROCEDURAL BACKGROUND

Victoria was admitted to Northview Villa Nursing Home (Northview) on April 18, 1994, following a period of hospitalization. She died on May 26. Muldrew retained Kratville and his firm, Terry & Kratville, to represent the Muldrew family in a wrongful death action against Northview.

On April 6, 1996, Kratville informed Muldrew that he was discontinuing his representation of the Muldrew family in the claim against Northview. Muldrew then filed a pro se wrongful

death petition against Northview on April 18, which required service by October 18. See Neb. Rev. Stat. § 25-217 (Reissue 1995). However, the wrongful death petition was brought in Muldrew's name, individually, instead of in the name of a personal representative for the benefit of the next of kin, as required by Neb. Rev. Stat. § 30-810 (Reissue 1995).

On October 14, 1996, Kratville sent a letter to Muldrew, advising him that a representative of Northview's insurance adjuster had contacted him and expressed an interest in settling the case and that Kratville would be willing to pursue such a settlement on Muldrew's behalf. Paulette Genthon, Muldrew's girl friend, testified that she and Muldrew met with Kratville on the morning of October 16 and provided him a copy of the pro se petition they had filed in April. Genthon stated that Kratville agreed during that meeting to resume representation of the matter and to take care of the service deadline approaching on October 18.

In contrast, Kratville testified that he merely spoke with Genthon via telephone on the afternoon of October 16, 1996, at which time Genthon informed him of the pro se petition, indicating that it had been filed on April 17 rather than the true filing date of April 18. Kratville further testified that he did not see the petition—and therefore was not aware of its defects—until the end of October or early November. Finally, Kratville testified that during his October 16 conversation with Genthon, he agreed to look at the court file but had not yet agreed to go forward with the matter, expressing a desire to speak with Muldrew before doing so. Kratville negotiated with Northview's insurance adjuster and, at trial, claimed he had an agreement with the adjuster that service on the wrongful death petition could be postponed as long as the parties were involved in negotiations. In March 1997, Kratville again withdrew from representation in Muldrew's wrongful death suit against Northview.

Around August 20, 1997, Muldrew retained the services of George Achola, and subsequently, service was made on Northview. On December 1, the wrongful death case was formally dismissed for failure of service within 6 months of the original filing, as required under § 25-217.

On October 13, 1998, Muldrew, as special administrator of Victoria's estate, filed a legal malpractice action against Kratville

and Lee R. Terry, individually and doing business as Terry & Kratville, alleging negligence in the representation of the Muldrew family in the wrongful death action. Genthon was later substituted for Muldrew as special administrator of the estate, and Terry was dismissed as a party prior to trial. Kratville filed a demurrer, alleging that a cause of action against him based on legal malpractice in withdrawing from representation of the Muldrew family on April 6, 1996, was barred by the 2-year statute of limitations for professional malpractice.

The district court found that because the alleged negligence occurred on April 6, 1996, the Muldrew estate was entitled to bring a legal malpractice action against Kratville until April 6, 1998. The court acknowledged that the legal malpractice petition was not filed until October 13, 1998, and, therefore, sustained Kratville's demurrer.

The special administrator ultimately filed additional amended legal malpractice petitions, presumably relying on the second period of representation by Kratville, not yet barred by the statute of limitations. Kratville filed a "Motion to Dismiss" the operative third amended petition, claiming that the allegations in the petition were insufficient to confer subject matter jurisdiction and that the petition failed to state a claim upon which relief could be granted. Kratville argued that the 2-year statute of limitations for malpractice actions barred any claims of legal malpractice with respect to Kratville's conduct prior to October 13, 1996, and that Kratville's failure to take action on the wrongful death petition within the 2 days before that petition's service deadline was not negligent, because the defective pro se wrongful death petition rendered the action a nullity.

In its order of January 8, 2004, the district court overruled the "Motion to Dismiss," finding that under the relation-back doctrine, Kratville *could* have preserved the estate's cause of action by taking steps to amend and serve the wrongful death petition that Muldrew filed against Northview.

Following a jury trial, Genthon, as special administrator of Victoria's estate, was awarded $275,000 in damages for the wrongful death and $25,000 for Victoria's predeath pain and suffering due to the medical negligence of Northview. Kratville's subsequent motions for judgment notwithstanding the verdict,

new trial, and remittitur were overruled. Kratville filed a timely appeal.

## ASSIGNMENTS OF ERROR

Kratville assigns several errors on appeal, which can be condensed and restated as follows: The district court erred in (1) finding relation back to be applicable to correct a defective wrongful death action and override an expired statute of limitations, (2) permitting references to Kratville's malpractice insurance to be placed before the jury and failing to declare a mistrial, (3) allowing evidence of a report of the Department of Health and Human Services regarding revocation of the Northview license to be placed before the jury, and (4) finding sufficient evidence to support the award of damages.

■ Kratville also assigns but does not argue that the district court erred in allowing matters that arose prior to October 13, 1996, to be placed before the jury. Errors that are assigned but not argued will not be addressed by an appellate court. *Nebraska Liq. Distrib. v. Nebraska Liq. Cont. Comm.*, 269 Neb. 401, 693 N.W.2d 539 (2005).

## STANDARD OF REVIEW

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005).

■ A motion for mistrial is directed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of abuse of that discretion. *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001).

■ In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005).

■ A motion for new trial is addressed to the discretion of the trial court, and the trial court's decision will be upheld unless it is based upon reasons that are untenable or if its action is clearly

against justice or conscience, reason, and evidence. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002).

■ The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998).

## ANALYSIS

### RELATION BACK

Kratville argues that under Nebraska law, an amendment to a wrongful death petition to cure a defect does not relate back to the original filing date. Therefore, Kratville asserts that even if he had learned of and cured the defects in the pro se wrongful death petition before expiration of the service period on October 18, 1996, the action would have been barred by the wrongful death statute of limitations (which expired May 26, 1996) and the doctrine of relation back would not have been available to permit the amendments to the pro se petition to relate back to the original filing date of April 18, 1996. In other words, Kratville argues that the statutory requirements for bringing a wrongful death action—including the requirement that it be brought within 2 years of the death and in the name of the decedent's personal representative—are conditions precedent to establishing such an action and that because Muldrew's pro se wrongful death petition did not do so, the action was a nullity. Consequently, Kratville argues that the court erred in failing to sustain his "Motion to Dismiss" and motions for judgment notwithstanding the verdict and for new trial.

Kratville's argument presents a two-part question: whether Muldrew would have been permitted to substitute the proper plaintiff in his wrongful death action and, if so, whether such an amendment would have related back to the original filing date of the pro se wrongful death petition.

■ In *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994), and again in *New Light Co. v. Wells Fargo Alarm Servs.*, 252 Neb. 958, 567 N.W.2d 777 (1997), we stated that, although the decision whether to allow an amendment to any pleading is within the discretion of the court, Neb. Rev. Stat.

§ 25-852 (Reissue 1995) is to be liberally construed so as to permit amendments when proposed at opportune times in furtherance of justice. Section 25-852 stated:

> The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, permit a party upon motion to amend any pleading, process, or proceeding by adding or striking out the name of any party or by correcting a mistake in the name of the party or a mistake in any other respect or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of Chapter 25, the court may permit the same to be made conformable thereto by amendment.

(While this section has since been repealed and replaced, it was still in effect at the time of the events underlying this case.) In *New Light Co., supra*, and *Hoiengs, supra*, we stated that the propriety of substituting parties depends on whether the cause of action otherwise remains the same. Where such substitution will introduce a new cause of action into the case, the substitution will not be allowed. *New Light Co., supra*; *Hoiengs, supra*.

The test for determining whether a new cause of action results from the substitution of parties is whether an attempt is made to state facts giving rise to a wholly distinct and different legal obligation against the defendant, or to change the liability sought to be enforced. In addition, in order to substitute one party for another, the party substituted must bear some relation to the original party or possess an interest in the controversy sufficient to enable that party to maintain the proceeding. *Id.*

In this case, the contents of the pro se wrongful death petition and the relief sought by the allegations within it would not have been altered by the substitution of the estate's special administrator as plaintiff. The facts alleged and the damages requested in the pro se petition are framed in the context of Victoria's wrongful death and the predeath pain and suffering she allegedly experienced as a result of the negligence of Northview's personnel. Thus, we conclude that substituting the estate's special

administrator as the plaintiff in Muldrew's wrongful death action would not introduce a new cause of action or, in other words, result in an attempt to state facts giving rise to a wholly distinct and different legal obligation against the defendant or change the liability sought to be enforced.

Further, Muldrew is the son of Victoria, and Muldrew ultimately served as the special administrator of Victoria's estate prior to the appointment of Genthon in his place. In addition, the special administrator of Victoria's estate has an interest in collecting for the alleged wrongful death and pain and suffering of Victoria for the benefit of her next of kin. Thus, the substitute party in this case—the special administrator of Victoria's estate —both is related to the original plaintiff *and* has an interest in the controversy sufficient to maintain the action. Because the substitution considered in this case would not have introduced a new cause of action and the substitute party has a sufficient interest in the action, the substitution would be permitted.

Next, we must determine whether the amended petition would have related back to the original filing date, so as to avoid bar by the statute of limitations. Section 30-810 provides that a wrongful death action "shall be commenced within two years after the death of such person. It shall be brought by and in the name of the person's personal representative for the exclusive benefit of the widow or widower and next of kin."

Relying on case law from other jurisdictions, Kratville argues that wrongful death actions are distinguishable from common-law actions because they fail to exist without strict compliance with the statutory conditions under which such actions may be brought. Kratville contends that a petition does not properly establish a cause of action for wrongful death if it is not brought in a representative capacity within the applicable statute of limitations and that thus, any amendment to such a petition would constitute a new cause of action and—if made after the limitations period—be barred.

The main purpose of a statute of limitations is to notify the defendant of a complaint against it within a reasonable amount of time so that the defendant is not prejudiced by having an action filed against it long after the time it could have prepared a defense against the claim. *New Light Co. v. Wells Fargo*

*Alarm Servs.*, 252 Neb. 958, 567 N.W.2d 777 (1997). Where the amendment does not introduce a new cause of action, but, rather, relies upon the same set of facts as the original pleading and the defendant is not prejudiced by the amendment, the right to a statute of limitations defense has not been violated. *Id.*

Although we have yet to specifically address amendments to wrongful death petitions and the applicability of the relation-back doctrine in such circumstances, we have considered amendments to pleadings made after the limitations period in other causes of action and have consistently concluded that such amendments relate back to the original filing dates. See *id.* (district court abused its discretion in failing to allow corporation to substitute related corporation and real party in interest as plaintiff after expiration of limitations period); *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988) (analysis of federal and Nebraska case law, general policy considerations, and provisions of Political Subdivisions Tort Claims Act led to conclusion that amended pleading under act should relate back to date of original pleading); *Kennedy v. Potts*, 128 Neb. 213, 258 N.W. 471 (1935) (amended petition not barred by statute of limitations where amendment elaborated upon same cause of action alleged in original petition); *State Bank of Gothenburg v. Carroll*, 81 Neb. 484, 116 N.W. 276 (1908) (substitution of one party plaintiff for another in pending action is continuation of original action rather than commencement of new action).

Furthermore, in *Russell v. New Amsterdam Casualty Company*, 303 F.2d 674 (8th Cir. 1962), the U.S. Court of Appeals for the Eighth Circuit considered Nebraska case law regarding amendments to pleadings and opined as to whether, if faced with the issue, Nebraska courts would permit relation back of amendments in wrongful death actions. In *Russell*, the district court dismissed a wrongful death action filed by the deceased's widow, finding that the cause of action was vested in the personal representative of the deceased and that, therefore, the deceased's widow had no right to maintain the action. Because the action had not been commenced by the party having legal capacity to do so, the court concluded that the cause of action was barred by the statute of limitations.

On appeal, the Eighth Circuit reversed the judgment of the district court. After evaluating several cases in which this court considered amendments to pleadings, the Eighth Circuit determined that the issue turns on whether the amended petition presents a new cause of action. *Id.* The court cited *State Bank of Gothenburg, supra,* in which we stated:

> " 'The plea of the statute of limitations was based upon the theory and assumption that the filing by the substituted plaintiff of an amended and substituted petition was the commencement of a new action, and that, more than five years having elapsed prior to the filing of such petition, the action was barred. It is conceded that the original action was begun previous to the running of the statute. We think the rule is generally well settled that the substitution of one party plaintiff for another in a pending action is a continuation of the original rather than the commencement of a new action. It is the same cause of action. Only another party has succeeded to the rights of one of the litigants, and in our practice such party may be substituted as the real party in interest in lieu of the one who commenced the action. Since the statute of limitations had not run at the commencement of the original action, it follows that it can be no defense in this action.' "

*Russell,* 303 F.2d at 680. The Eighth Circuit recognized Nebraska's liberal practice of permitting amendments to original petitions and concluded that the district court's dismissal of the deceased's widow's complaint was based upon an erroneous concept of Nebraska law. Further, the court stated that an amendment to the complaint would not have introduced a new and different cause of action and, thus, should have been permitted. *Id.*

The Eighth Circuit's analysis of our precedent was correct. We see no reason to distinguish between relation back of amendments to pleadings in actions for wrongful death and relation back of similar amendments in other causes of action. Thus, having already determined that the amendment to Muldrew's wrongful death petition would have been permitted, we also conclude that the amendment would relate back to the original filing date of the petition and, thereby, avoid the bar of the statute of limitations.

Although Kratville had a short time in which to accomplish the task of curing the defective pro se petition and serving the appropriate defendant, testimony at trial suggested that it was feasible. An attorney testified at trial, as an expert witness, that the tasks necessary to cure Muldrew's pro se wrongful death petition could have been completed in the time remaining before expiration of the service period on October 18, 1996. In fact, the attorney testified that in his practice, he had previously established an estate, had a personal representative appointed, and filed a petition in district court, all in a period of 8 or 9 hours. Although Kratville testified that he was unaware of the defects in the petition prior to the expiration of the service period, there was testimony to the contrary sufficient to sustain the jury's findings. Consequently, the district court did not err in overruling Kratville's "Motion to Dismiss" and his motions for judgment notwithstanding the verdict and for new trial, finding that Muldrew's pro se wrongful death petition could have been amended to include the proper parties and avoid bar by the statute of limitations through the doctrine of relation back.

### INSURANCE REFERENCES

Kratville next argues that the district court erred in failing to order a mistrial and in overruling his motions for judgment notwithstanding the verdict and for new trial due to the allegedly prejudicial effect of trial testimony referencing Kratville's malpractice insurance coverage and insurance held by Northview. The trial testimony upon which Kratville relies most in support of his argument was given by Achola on direct examination during the following exchange:

[Plaintiff's counsel:] And did . . . Muldrew ask you to take the malpractice case against . . . Kratville?

[Achola:] No — yes, he did. He initially did. And as a matter of fact, you could probably find some correspondence somewhere in this file where I advised . . . Kratville of the fact that I thought there might have been malpractice and he probably should notify his carrier. And [Kratville], if I remember correctly, asked me to think twice about that and to talk to him before I did anything further on that issue.

Kratville asserts that Achola's reference to "carrier" warrants a mistrial. A motion for mistrial is directed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of abuse of that discretion. *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001). A mistrial is appropriate when an event occurs during the course of a trial which is of such a nature that its damaging effects would prevent a fair trial. See *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991). Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters provide examples of events which may require the granting of a mistrial. See *id.* A motion for mistrial should be made at the first reasonable opportunity. If not timely made, it is waived. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Id.* In addition to being timely, a motion for mistrial must be premised upon actual prejudice, not the mere possibility of prejudice. See *Groves, supra.*

In this case, Kratville argues that the reference to his insurance carrier made by Achola during his testimony was highly prejudicial. However, Kratville did not object to the question or move to strike the answer at the time of the testimony. He also failed to make any such motion at the conclusion of Achola's testimony, after the subsequent testimony of Muldrew, or at the end of trial proceedings that day, at which time several matters were dealt with outside the presence of the jury. Kratville made his first objection to the testimony in a motion for mistrial the following day, which arguably was beyond the first reasonable opportunity and, therefore, untimely.

However, even assuming that Kratville's objection to Achola's testimony was timely, the district court did not abuse its discretion by overruling the motion for mistrial. The only reference to Kratville's insurance made in the presence of the jury over approximately 6 days of testimony was Achola's mention of Kratville's "carrier." In addition, the question preceding Achola's reference to Kratville's "carrier" did not call for an

answer relating to or including information about Kratville's insurance carrier and, therefore, was not made at the prompting of Muldrew's attorney, but, rather, as an inclusion by Achola in answering a question on direct examination.

■ It is not every casual or inadvertent reference to an insurance company in the course of trial that will necessitate a mistrial. Whether the disclosure is such as to constitute error depends essentially upon the facts and circumstances peculiar to the case under consideration. *Stumpf v. Nintendo of America*, 257 Neb. 920, 601 N.W.2d 735 (1999). Instead of making a timely objection and seeking to have any prejudice cured by a motion to strike or an admonishment to the jury, Kratville made a belated motion for the most extreme remedy. Based on our review of the record, any prejudice from Achola's testimony was not sufficient to warrant the remedy of a mistrial and the district court did not abuse its discretion in overruling Kratville's motions based on prejudicial trial references to insurance.

■ Although Kratville's assignment of error focuses primarily on the purported prejudice of Achola's reference to Kratville's "carrier," he also asserts that references to Northview's insurance adjuster made throughout the trial were prejudicial and grounds for mistrial. However, the estate's prima facie case for malpractice against Kratville required proof that the underlying wrongful death case would have been successful but for Kratville's negligence, and evidence of Northview's insurance was relevant to show that a monetary judgment in such a case against Northview would have been recoverable. It is the established law of this jurisdiction that where the fact of insurance is relevant to some issue in the case, it cannot properly be excluded, but where not relevant to any such issue, evidence of the existence of insurance coverage is inadmissible. *Kresha v. Kresha*, 216 Neb. 377, 344 N.W.2d 906 (1984). Although the parties stipulated to the fact that any monetary judgment or settlement recovered against Northview would have been collectible in full, based on the record, there exists no reversible error due to references to Northview's insurance carrier during trial. Therefore, we conclude that the court did not abuse its discretion in overruling Kratville's motion for mistrial.

REFERENCE TO NORTHVIEW'S LICENSE REVOCATION

Kratville next assigns that the district court erred in allowing evidence of the report of the Department of Health and Human Services regarding revocation of Northview's license to be placed before the jury. However, the only reference to the license revocation within Kratville's brief on appeal is the following: "The sole purpose of [Genthon] in introducing into evidence revocation of Northview's license by Nebraska's Department of Health and Human Services, when that evidence was irrelevant and immaterial to [Victoria's] death, was to inflame the passion of the jury. Its effect was highly prejudicial." Brief for appellant at 36-37. Kratville does not specify which evidence or testimony is the subject of his challenge and, further, does not indicate how it was prejudicial to his defense. Kratville's "argument" merely consists of a reformulation of the assigned error and, therefore, does not constitute the required argument in support of the assigned error. See, *Slansky v. Nebraska State Patrol*, 268 Neb. 360, 685 N.W.2d 335 (2004); *State ex rel. Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003).

■ Furthermore, the only basis for exclusion of the evidence mentioned in Kratville's appellate brief, as quoted above, is that the evidence was irrelevant. But our review of the record reveals that the only objection made to the report at trial was that the evidence was cumulative. One may not, on appeal, assert a different ground for excluding evidence than was urged in the objection to the trial court. *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003). A later reference made to the revocation of Northview's license was received without objection. A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *Parker v. Parker*, 268 Neb. 187, 681 N.W.2d 735 (2004).

■ Kratville's failure to argue in support of this assignment of error means that he has failed to direct this court to any instance in the record at which a timely relevance objection was made. It is not the function of an appellate court to scour the record looking for unidentified evidentiary errors. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005). In the absence of any reference to a point in the proceedings when evidence was erroneously admitted over a timely relevance

objection, we fail to find merit in Kratville's assignment that the district court erred in allowing evidence of Northview's license revocation to be admitted into evidence.

## SUFFICIENCY OF EVIDENCE

Finally, Kratville assigns that the district court erred in overruling his motion for remittitur. Kratville argues that the award of damages, consisting of $275,000 for wrongful death and $25,000 for predeath pain and suffering, was excessive and unsubstantiated by the evidence.

An award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004). In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Smith v. Colorado Organ Recovery Sys., supra.* In this case, the evidence is sufficient to support the award of damages. The estate introduced evidence to prove the underlying claim of wrongful death, ultimately found to have been lost as a result of legal malpractice on the part of Kratville.

The physician who was on duty when Victoria was brought to the emergency room shortly before her death performed numerous tests on Victoria, a diabetic, during her treatment at the emergency room. He found her blood glucose level to have significantly elevated from 172 on May 23, 1994, to approximately 1,150 when she arrived at the emergency room on May 26. In addition, the physician found Victoria to be severely dehydrated. He referred to the nursing home records in testifying that Victoria was nonresponsive for a number of hours before she was ultimately brought to the emergency room. The physician opined that the nursing home's negligence in leaving her in such a state for an extended period of time and allowing her blood glucose to rise to such a high level resulted in her death. As a result of the physician's discoveries as well as other observations of allegedly neglected patients from Northview, he contacted the Department of Health and Human Services Adult Protective Services.

Finally, there was substantial evidence adduced regarding the loss of Victoria's society, comfort, and companionship sustained by her children as a result of her death. Genthon testified about numerous examples of the mutual love and devotion exercised between Victoria and her children, including large family gatherings that took place on Sundays, during which Victoria's children and grandchildren would meet for the entire day to cook and visit with one another. Muldrew also testified in detail about his close relationship with Victoria and explained that he often went to her for advice and comfort while raising his own children.

In sum, based on our review of the record, we conclude that the evidence presented at trial was sufficient to support the verdict for the loss of Victoria's society, comfort, and companionship sustained by her next of kin and for her predeath pain and suffering due to the negligence of Northview. On appeal, the fact finder's determination of damages is given great deference. *In re Petition of Omaha Pub. Power Dist.*, 268 Neb. 43, 680 N.W.2d 128 (2004); *Brandon v. County of Richardson*, 264 Neb. 1020, 653 N.W.2d 829 (2002). The amount of damages awarded by the jury is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. See *Williams v. Monarch Transp.*, 238 Neb. 354, 470 N.W.2d 751 (1991). Accordingly, the district court did not err in overruling Kratville's motion for remittitur.

## CONCLUSION

Having found Kratville's assignments of error to be without merit, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., not participating.