IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

AUSTIN V. TIMPERLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BARBARA A. AUSTIN, BY DONALD R. AUSTIN, HER NEXT FRIEND,
APPELLANT AND CROSS-APPELLEE,
V.
JUDITH TIMPERLEY, APPELLEE AND CROSS-APPELLANT.

Filed March 25, 2014.    No. A-12-933.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Dale D. Dahlin, P.C., L.L.O., for appellant.

Scott A. Lautenbaugh, of Hansen, Lautenbaugh & Buckley, L.L.P., for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

INTRODUCTION

This matter is before the court on a motion for rehearing. We granted the motion for rehearing of Barbara A. Austin (Austin) by Donald R. Austin, her next friend, regarding our previously released opinion in this case. See *Austin v. Timperley*, No. A-12-933, 2013 WL 6622917 (Neb. App. Dec. 17, 2013) (selected for posting to court Web site). We withdraw the previous opinion in its entirety and issue this opinion in its place.

Austin appeals from a jury verdict in the district court for Lancaster County awarding her damages for injuries she sustained in a motor vehicle accident. Austin takes issue with the amount of damages awarded and the court's refusal to give a certain jury instruction. Judith Timperley cross-appeals, arguing that the trial court erred in excluding expert testimony. Based on the reasons that follow, we affirm.

- 1 -

BACKGROUND

On December 21, 2007, Austin and Timperley were involved in a motor vehicle accident when Timperley's vehicle rear-ended Austin's vehicle. Following the collision, both parties exited their vehicles, observed little to no damage to either vehicle, exchanged contact information, and drove away from the scene.

On December 26, 2007, Austin went to see Dr. Kathryn Hajj for right shoulder pain and told her that she had been rear-ended by a vehicle on December 21 and that the right shoulder pain began immediately after the accident. Hajj treated Austin with prescription medication and referred her to physical therapy. Austin attended physical therapy from December 31, 2007, to January 25, 2008.

On January 24, 2008, Austin returned to Hajj for right shoulder pain and Hajj injected her right shoulder with cortisone, an anti-inflammatory medication. On March 12, Austin again saw Hajj for shoulder pain and was given another cortisone injection. Austin had a followup visit with Hajj on March 19, and the record indicates she told Hajj that she was pain free.

On June 25, 2008, Austin returned to Hajj with shoulder pain. Hajj recommended an MRI of the right shoulder to assess for a tear of the right rotator cuff tendon, and an MRI was done that day.

On July 3, 2008, Hajj advised Austin that the MRI showed a tear of the rotator cuff tendon. Hajj referred Austin to Dr. David L. Samani, an orthopedic surgeon, for evaluation and possible surgery.

Samani saw Austin on July 16, 2008, and reviewed the MRI. He also reviewed Austin's medical records from Hajj. He found that Austin suffered an acute full-thickness tear of her rotator cuff in her right shoulder. Samani performed surgery on Austin's shoulder on August 22. Austin had several followup visits with Samani after surgery, and she also went to physical therapy for a period of time.

On November 2, 2009, Austin filed a complaint against Timperley alleging that on December 21, 2007, Timperley negligently rear-ended and collided with Austin's vehicle causing injuries to her right shoulder. The complaint sought damages in the amount of $33,060.78 for medical expenses, as well as other damages.

On February 8, 2012, Austin filed a motion in limine seeking to exclude the testimony of two witnesses Timperley had designated as experts. One expert was an accident reconstructionist who concluded that the forward acceleration experienced by Austin was no more than 8 miles per hour. The other expert was a biomechanical expert who concluded that Austin's injuries were not consistent with the forces and accelerations sustained in the rear-end collision. Following a hearing on the motion, the trial court sustained the motion in limine, finding that the reasoning or methodology underlying the expert testimony was not scientifically valid and reliable. See, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

A jury trial was held on August 7, 2012. Prior to trial, Timperley admitted that she was negligent in the operation of her vehicle and that her negligence was the proximate cause of the collision, but denied that such negligence proximately caused the injuries and damages alleged by Austin.

Timperley testified that at the time of the accident, she was driving a minivan. She testified that just before the collision, she had stopped her vehicle at a red light, and that there were several vehicles stopped in front of her. Austin was immediately in front of her, driving a sport utility vehicle. Timperley testified that when the light turned green, the vehicles in front of her began to move. She looked away from the vehicles in front of her for a moment and when she looked back, Austin's vehicle had stopped in front of her and she hit it. Timperley estimated that her speed at the time of the collision was 10 to 15 miles per hour or less. She testified that at the time of impact, she had just started moving forward from a stopped position and traffic in front of her was just starting to proceed after the traffic light turned green.

Timperley testified that after the collision, she and Austin exited their vehicles and exchanged contact information. She testified that Austin indicated there was no need to call the police because there was little to no damage to the vehicles and no one was hurt. Timperley testified that the only damage to her vehicle was a bent license plate.

Austin did not testify, but Austin's medical records from Hajj indicated that at Austin's first visit after the accident, she told Hajj that she was rear-ended by a small car that was going about 35 miles per hour and did not attempt to stop prior to impact. Donald, Austin's husband, testified that Austin's vehicle had minor damage to the bumper and trailer hitch. Photographs of Austin's vehicle were also entered into evidence.

A video deposition of Samani was entered into evidence and played for the jury. Samani testified that Austin suffered an acute full-thickness tear of her rotator cuff, which he explained means that the tear had occurred "recently" at the time of the MRI, the tear was not the type of tear that had been present for a long period of time, and the tear was not caused by repetitive use.

He further testified that it was his opinion within a reasonable degree of medical probability that the rotator cuff tear was caused by the accident on December 21, 2007. His opinion was based on information provided by Austin and on her medical records indicating that she did not have any shoulder pain or any trauma to the shoulder prior to the motor vehicle accident, as well as the fact that the tear occurred recent in time in relation to the MRI.

He testified that an acute tear such as Austin's can be caused by a variety of types of impacts or traumas, such as falls. He testified that there was no mention in Austin's medical records that she had fallen or any mention of other trauma to the shoulder besides the motor vehicle accident.

Medical bills marked as exhibits 13 through 19, totaling $32,828.78, were offered by Austin and received into evidence without objection. The bills included Austin's treatment with Hajj and her physical therapy between December 2007 and January 2008, as well as her treatment and surgery with Samani and the physical therapy that followed surgery. As to each medical billing, Samani testified in his deposition that the treatment reflected in each billing was necessary for the treatment of the injuries Austin suffered as a result of the December 21, 2007, accident.

Samani also testified that the medical bills were fair and reasonable. Timperley had stipulated in the pretrial order that the medical expenses were fair and reasonable, but did not stipulate that they were necessary or caused by the accident.

At the close of evidence, Austin motioned for a partial directed verdict asking the court to find as a matter of law that the medical expenses totaling $32,828.78 were related to the

accident. She argued that the medical expenses were undisputed, that there was testimony to support a conclusion that the expenses were necessary as a result of her injury caused by the accident, and that the expenses were fair and reasonable. The court overruled the motion.

Following trial, the jury entered a verdict in favor of Austin, finding that the accident was a proximate cause of some damage to her, awarding her $1,466 for medical expenses, and awarding her $0 for other damages. The court entered judgment based on the verdict.

Austin filed an amended motion for new trial, which the trial court overruled.

## ASSIGNMENTS OF ERROR

Austin assigns that (1) the trial court erred in denying her motion for partial directed verdict on the issue of medical expenses, (2) the amount of damages awarded by the jury is inadequate, and (3) the trial court erred in refusing to give a jury instruction regarding insurance.

On cross-appeal, Timperley assigns that the trial court erred in excluding the testimony of her experts under *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

## STANDARD OF REVIEW

The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010).

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Credit Bureau Servs. v. Experian Info. Solutions*, 285 Neb. 526, 828 N.W.2d 147 (2013).

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. *Id.*

## ANALYSIS

*Motion for Partial Directed Verdict/*
*Inadequate Damages.*

Austin assigns that the trial court erred in denying her motion for partial directed verdict and argues that the jury's award of $1,466 for medical expenses is inadequate. She makes the same argument in support of both assignments of error. She argues that her medical expenses totaling $32,828.78 were undisputed at trial because they were evidenced by bills that were received into evidence without objection and because Samani testified that the medical expenses were necessitated by the injuries she sustained in the motor vehicle accident.

We first note that the admission of medical bills into evidence without objection does not amount to a concession by the opposing party that these services were necessitated by the accident. See *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999). Further, although Timperley stipulated in the pretrial order that the medical bills were fair and reasonable, she did not stipulate that the medical expenses were necessitated by the accident.

In awarding damages, the fact finder is not required to accept a party's evidence of damages at face value, even though that evidence is not contradicted by evidence adduced by the party against whom the judgment is to be entered. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002). Generally, a jury is entitled to determine what portion of a claimed injury was proximately caused by the incident and what portion of the medical bills was reasonably required. *Id.*

Although Samani provided the only testimony as to whether the medical expenses were necessitated by the accident, there was other evidence from which the jury could conclude that not all of the medical expenses were necessitated by the accident.

The evidence shows that Austin had an appointment with Hajj on December 26, 2007, 5 days after the accident, and complained of right shoulder pain. Between December 26, 2007, and March 19, 2008, Austin treated with Hajj for shoulder pain, which included two cortisone injections and physical therapy. On March 19, a week after her second cortisone injection, Austin reported to Hajj that she was "much improved" and stated that on that day she was pain free.

After the March 19, 2008, visit with Hajj, Austin did not have any doctor's visits for shoulder pain and did not have any physical therapy appointments. It was not until June 25 that Austin returned to see Hajj for shoulder pain and it was ultimately determined she had a tear in her rotator cuff. Therefore, there was a 3-month break in any treatment for Austin's right shoulder. The jury was left to wonder what happened to Austin during that gap in treatment. In conjunction with the gap in treatment, the jury heard testimony from Samani that the type of tear Austin suffered can be caused by other types of traumas or impacts, such as a fall.

Further, Samani testified that his opinion that Austin's rotator cuff tear was caused by the accident was based in part on Austin's medical records, which included Austin's claim that Timperley was traveling 35 miles per hour at the time of impact and did not attempt to slow down. Timperley provided conflicting testimony, stating that she could not have been going any faster than 10 to 15 miles per hour because she had just started moving forward after being completely stopped at the traffic light.

Based on the gap in treatment, the conflicting evidence of speed at the time of impact, and the relatively minor damage sustained by both vehicles, the jury could reasonably determine that not all of Austin's medical treatment and thus, expenses, were necessitated by the accident. The jury awarded Austin $1,466 in medical expenses, rather than the $32,828.78 that Austin claims should have been awarded. By awarding Austin some damages, the jury found that Austin met her burden of proof that the accident was the proximate cause of some damage to Austin, but was not the proximate cause of all the damages Austin claimed. The jury could find that Austin sustained injury to her right shoulder from the accident, but that the injury was resolved by March 19, 2008, and that any further injury, i.e., the rotator cuff tear, was not proximately caused

by the accident. Based on the medical bills presented, the damages awarded bear a reasonable relationship to Austin's medical expenses between December 26, 2007, and March 19, 2008.

It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of witnesses. *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999). In addition, triers of fact are not required to take opinions of experts as binding upon them. *Id.* Determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Id.*

There is conflicting evidence as to whether all of Austin's medical bills were necessitated by the December 21, 2007, accident. The jury could have reasonably found that the evidence did not support the finding that all of the medical expenses were a result of the accident. Accordingly, the trial court did not err in denying Austin's motion for partial directed verdict because reasonable minds could differ and could draw more than one conclusion in regard to the evidence of medical expenses necessitated by the accident. We further conclude that the jury's award is supported by the evidence and bears a reasonable relationship to the elements of damages proved and that therefore, the jury's verdict in regard to medical expenses is not inadequate.

Austin also argues that the jury's failure to award any amount of "'other damages'" was an inadequate award because Austin experienced pain and suffering with the injury. Brief for appellant at 6. There was very little evidence presented to the jury about any pain, suffering, restrictions, or hardship that Austin went through as a result of her shoulder injury. In fact, as noted previously, Austin herself did not testify at trial. The jury was not required to award "other damages," and we conclude, based on the evidence presented, that the jury did not err in failing to award any amount of "other damages."

*Jury Instruction Regarding Insurance.*

Finally, Austin assigns that the trial court erred in refusing to give the jury an instruction regarding insurance. Austin requested a jury instruction informing the jury that it could not speculate about insurance or consider any possible sources of benefits that Austin may have received in deciding the case. The court declined to give the instruction.

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. *Id.*

Austin's request for the insurance instruction apparently was a result of a prospective juror asking Austin's counsel during voir dire whether payments had been made by insurance. Voir dire is not in the record before us, but the trial court's order on Austin's amended motion for new trial states that a prospective juror asked the question about insurance. The trial court's order further states that the prospective juror was told by counsel that the jury should not consider the issue of insurance; that neither party requested the court for an admonishment; and

that the issue of insurance was not raised during any portion of the trial, including opening statements, evidence, or closing arguments.

The trial court concluded that because there was no mention of insurance during the trial, the instruction requested by Austin would only serve to mislead and confuse the jury and draw attention to an issue that was not raised during the evidence. It also noted that the jury was instructed that it was not to indulge in any speculation, guess, or conjecture as to the evidence.

While we agree with the court's refusal to give Austin's proffered insurance instruction to the jury, we disagree with the court's statement that there was no mention of insurance during trial. Based on our review of the record, there was one reference to insurance made during Timperley's case in chief.

The reference to insurance occurred during Timperley's direct testimony. Timperley testified that after the accident, she and Austin exchanged insurance information. She testified that while they were talking and exchanging information, Austin looked at Timperley's insurance card, which listed Timperley's daughter's name and Timperley's name. Timperley testified that Austin asked her several times if her name was "Donna" and that Timperley explained that "Donna" was her daughter and that her name was "Judy." At that point, Austin's counsel objected on the ground of a narrative answer, and the objection was sustained.

Timperley next clarified that she and her daughter are both listed on the insurance card. Timperley's counsel asked Timperley if there was confusion between her and Austin in regard to Timperley's identity based on the insurance card, and Timperley responded that there was. Austin's counsel made a relevance objection, which was overruled.

As previously stated, the trial court was mistaken in stating that there was no mention of insurance during the trial. However, we note that during Timperley's testimony, Austin's counsel did not object to the insurance references on the basis that Timperley was inappropriately interjecting the issue of insurance into the trial. He only objected on the basis of a narrative answer and relevance.

Further, Austin never made a motion for mistrial. A motion for mistrial should be made at the first reasonable opportunity. If not timely made, it is waived. *Genthon v. Kratville*, 270 Neb. 74, 701 N.W.2d 334 (2005). We conclude that Austin's proffered instruction regarding insurance or other sources of benefits was not warranted by the evidence and that Austin was not prejudiced by the court's failure to give the requested instruction.

We also determine that Austin has failed to show that the requested instruction is a correct statement of Nebraska law. The jury instruction that Austin proposed was an Illinois pattern jury instruction, not an approved Nebraska jury instruction. While Austin contends that the comment to NJI2d Civ. 4.01 contains similar language to the proposed instruction, it is not the same language. Austin does not show why the language in the Illinois pattern jury instruction was appropriate in this case.

We conclude that the trial court did not err in refusing to give Austin's requested jury instruction in regard to insurance. This assignment of error is without merit.

*Timperley's Cross-Appeal.*

Timperley filed a cross-appeal, assigning that the trial court erred in excluding the testimony of two experts. However, her brief requests that we address this assignment of error

only in the event that we find merit to any of Austin's assignments of error and grant Austin a new trial. Based on our determination that Austin's assignments of error are without merit and that the jury's verdict should be affirmed, we need not address Timperley's cross-appeal.

CONCLUSION

We withdraw our previous opinion in this case, found at *Austin v. Timperley*, No. A-12-933, 2013 WL 6622917 (Neb. App. Dec. 17, 2013) (selected for posting to court Web site), and issue this opinion in its place.

We conclude that the trial court did not err in denying Austin's motion for partial directed verdict on the issue of medical expenses, that the amount of damages awarded by the jury is not inadequate, and that the trial court did not err in refusing to give a jury instruction regarding insurance. Having found no merit to any of Austin's assignments of error, we do not address Timperley's cross-appeal. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.