RICHARD ROBISON, DOING BUSINESS AS ROBISON CONSTRUCTION, APPELLANT, v. ROLAND CRAIG MADSEN AND THERESA ANN MADSEN, HUSBAND AND WIFE, AND NORWEST BANK NEBRASKA, APPELLEES.

516 N.W.2d 594

Filed May 27, 1994.    No. S-92-948.

Terrance A. Poppe and Joel G. Lonowski, of Hecht, Sweet, Morrow, Poppe & Otte, P.C., for appellant.

William J. Morris and Jim R. Titus, of Nelson Morris Holdeman & Titus, for appellees Madsen.

HASTINGS, C.J., BOSLAUGH, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

PER CURIAM.
After Richard Robison, doing business as Robison Construction, presented evidence and rested in his residential construction lien foreclosure action, the trial court, on motion of the residence's owners, dismissed Robison's case because he had failed to prove the amount of his lien.

We affirm the dismissal by the district court for Lancaster County.

## ASSIGNMENTS OF ERROR
Robison claims that the trial court erred in (1) sustaining the

owners' motion to dismiss on grounds of insufficient evidence of the actual cost of constructing a residence for its owners and (2) overruling Robison's motion for new trial.

## STANDARD OF REVIEW

An action to foreclose a construction lien is one grounded in equity. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

When a defendant in an equity action moves to dismiss the plaintiff's action at the close of the plaintiff's evidence, the defendant, for the purposes of considering the defendant's motion, admits the truth of the plaintiff's evidence and testimony, together with every inference which may fairly and reasonably be drawn therefrom. The court must then determine, as a question of law, whether the plaintiff's evidence has made a prima facie case. *Schall v. Anderson's Implement*, 240 Neb. 658, 484 N.W.2d 86 (1992).

A district court's denial of a motion for new trial will be affirmed when the court's decision is neither erroneously prejudicial nor an abuse of discretion. See *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994).

## FACTS

On May 8, 1990, Roland Craig Madsen and Theresa Ann Madsen, by written contract, agreed to pay Robison the actual direct cost of the construction of a residence in the city of Lincoln's subdivision of Williamsburg Village, plus 10 percent for overhead and profit. The contract set forth an *estimated* total cost of $191,966, but established the contract price as "the sum of actual direct construction cost plus ten percent for overhead and profit for the construction to be performed by Contractor [Robison]."

When the Madsens failed to pay the unpaid balance of what

Robison claimed was due him, Robison filed a construction lien and subsequently filed this action in the district court for Lancaster County.

The contract defined direct construction cost as "all costs to complete the Project in accordance with the plans and specifications." Attached to the contract was an 11-page, detailed list of specifications, which both Robison and Roland Madsen signed. Also entered into evidence were copies of plans for the construction of the Madsens' residence, which Robison testified were the plans referred to in the contract.

Robison began construction of the home in May 1990. As work progressed, Robison prepared and sent to the Madsens monthly statements showing his calculations of the construction costs incurred to the date of each statement. Robison testified that he based these calculations on invoices sent to him by subcontractors and the costs of labor performed by his own employees.

Robison testified that after the residence was substantially completed in late September 1990, he and Roland Madsen walked through the house and made a "punch list" of the items Madsen thought should be corrected. Robison testified that he corrected most of the items on that list in October.

Up to that time, the Madsens apparently had paid the monthly statements Robison sent them. Robison testified that in mid-October, Roland Madsen paid him $16,478 on the September bill but refused to pay the remaining balance. Robison testified that he then stopped working on the residence. He subsequently filed a construction lien against the property to secure the unpaid balance, which Robison claimed was $61,101.22 at that time. On March 5, 1991, Robison filed a petition to foreclose the construction lien in the district court for Lancaster County.

In their answer, the Madsens admitted that they had entered into the contract dated May 8, 1990. They also asserted as affirmative defenses that they had been induced to enter into the contract by fraudulent misrepresentations and that Robison had failed to construct the house in a good and workmanlike manner.

At trial, Robison claimed that the Madsens owed him

$61,101.22, plus subsequent finance charges for a total of $71,756.21. At the close of Robison's case, the district court granted the Madsens' motion to dismiss Robison's petition on grounds of insufficient evidence of the actual cost of constructing the Madsens' residence. Robison then filed a motion for new trial, which the district court overruled. Robison appealed to the Nebraska Court of Appeals. Under our authority to regulate the caseloads of the appellate courts of this state, we removed the matter to this court.

## ANALYSIS

To dispose of this appeal, we need only address Robison's first assignment of error that the district court erred in dismissing Robison's petition on the ground of insufficient evidence of the actual direct construction cost. In connection therewith, we must also address Robison's claim that a statement contained in the Madsens' answer was a judicial admission.

In their answer, the Madsens alleged for their first affirmative defense that Robison had quoted the Madsens various estimates of construction costs, that Robison had made material representations of fact that were false or made with reckless disregard for their truth or falsity, and that the Madsens had relied on these representations in entering into the contract. As part of this allegation, the Madsens also stated:

> [T]he amount set forth in the April 30, 1990 estimate was in the amount of $186,798 and *the contracted amount was in the amount of $191,966*; and the variance between said sums arose because of the failure of the Plaintiff to include certain items in preparing said amount and the Defendants were aware of this variance and asserted [sic] to the variance by executing the contract.

(Emphasis supplied.)

Robison claimed, at the hearing on his motion for new trial and on appeal, that by making this assertion in their answer, the Madsens made a judicial admission that the contract established a *minimum* price of $191,966. Robison argues that because the Madsens admitted a minimum contract price in their answer, he did not have to produce evidence of the

contract price at trial. Therefore, he argues that he is entitled to at least $34,287.13, which is the difference between Robison's alleged minimum price of $191,966 and the amount the Madsens paid, $157,678.87.

Robison did not advance this theory of a minimum contract price in his pleadings or at trial. His petition alleges that the amount due under the contract was $61,101.22 and that this amount represented the actual direct construction cost, plus 10 percent for overhead and profit, less the amount paid by the Madsens. He did not claim in his petition that he was owed any minimum amount.

The record fails to reflect that Robison claimed at trial that the contract established a minimum price. Throughout Robison's testimony at trial, he consistently characterized the contract price as the actual direct cost of constructing the residence plus 10 percent, regardless of whether that amount turned out to be more or less than the estimate of $191,966 set forth in the contract.

Robison raised this argument only after the district court determined that Robison had failed to produce sufficient evidence of the actual direct construction cost and dismissed Robison's case. The time to have raised this theory of a minimum price was not on a motion for new trial or in this court on appeal. See *Ford v. County of Perkins*, 190 Neb. 304, 207 N.W.2d 694 (1973).

An issue not presented to or passed upon by the trial court generally is not appropriate for consideration on appeal. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994). An appellate court is obliged to dispose of a case on the basis of the theory presented by the pleadings on which the case was tried. *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993). Cases are determined in an appellate court on the theory upon which they were tried. *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992).

Upon a de novo review of this cause on the theory upon which it was tried, we find that the district court did not err in dismissing Robison's petition for lack of sufficient evidence.

Under contracts designed as "cost plus" agreements, the amount owing the builder should be computed on the basis of

the amount actually spent for labor, materials, and supplies which go into and become a part of the finished structure, including the amounts paid to subcontractors. *LaPuzza v. Prom Town House Motor Inn, Inc.*, 191 Neb. 687, 217 N.W.2d 472 (1974). The burden of proof is upon one claiming a mechanic's or construction lien to show that the material furnished by him was used in the construction of the building. See *Lofholm v. Stoltenberg*, 178 Neb. 318, 133 N.W.2d 387 (1965).

In this case, the contract defined actual direct construction costs as those costs incurred in completing the Madsens' house according to plans and specifications. To prove the actual direct construction cost, Robison offered statements that he compiled from his subcontractors' invoices and his own employees' labor charges. With regard to the invoices, Robison testified that neither he nor his employees verified that the items on the invoices had been installed in the Madsens' residence or that the work on the invoices had been performed. Robison testified that he had reviewed the invoices generally for accuracy, but that it was possible he had billed the Madsens for items they did not receive. Given this testimony, we find that Robison failed to meet his burden of proving that the material and labor for which he charged the Madsens went into, and became a part of, the finished structure, and therefore, Robison failed to provide sufficient evidence of the actual direct construction costs for completing the house according to plans and specifications.

Even if Robison had advanced his theory of a minimum contract price at trial, his argument would fail because the allegation at issue in the Madsens' answer was not a judicial admission.

A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. See, *Lange Building & Farm Supply, Inc. v. Open Circle "R", Inc.*, 210 Neb. 201, 313 N.W.2d 645 (1981); *Sempek v. Sempek*, 198 Neb. 300, 252 N.W.2d 284 (1977).

Judicial admissions must be unequivocal. See *Modern*

*Plumbing & Heating, Inc. v. Journey West Campground, Inc.*, 193 Neb. 781, 229 N.W.2d 192 (1975). See, also, *Field v. Aim Management Group, Inc.*, 845 S.W.2d 469 (Tex. Civ. App. 1993) (judicial admission must be deliberate, clear, and unequivocal); *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 589 N.E.2d 640 (1992) (judicial admission is any admission contained in original verified pleading which is not the product of mistake or inadvertence). This court has further stated that an admission in an answer does not extend beyond the intendment of the admission *as clearly disclosed by its context*. See, *O'Neal v. First Trust Co.*, 160 Neb. 469, 70 N.W.2d 466 (1955); *Barry v. Barry*, 147 Neb. 1067, 26 N.W.2d 1 (1947).

The statement at issue in the Madsens' answer appears in the context of allegations regarding the various *estimates* proffered by Robison. The specific reference to $191,966 clearly refers to the estimated cost set forth on the first page of the written contract. The intent of this statement, as clearly disclosed by its context, was not to admit that the contract established a minimum price, but simply to allege what the parties had agreed to as the estimated cost in the written contract. The statement in the Madsens' answer is not an unequivocal admission that the contract established a minimum price of $191,966. This is particularly true because the contract itself states in plain language that the contract price is the actual direct construction cost plus 10 percent.

Furthermore, even if the Madsens had unequivocally admitted in their answer that the contract established a minimum price, Robison could not bind the Madsens to it when Robison never relied on the admission and, in fact, produced evidence to the contrary. See, *Collision Center Paint & Body v. Campbell*, 773 S.W.2d 354 (Tex. Civ. App. 1989) (a party waives the right to rely on opponent's admission unless objection is made to the introduction of evidence contrary to those admissions); *Jenni v. Gamel*, 602 S.W.2d 696 (Mo. App. 1980) (admission in pleading is not binding upon party where opponent does not rely upon the admission, but, rather, introduces evidence to the contrary). See, also, 31A C.J.S. *Evidence* § 381 c. (1964).

As already noted, Robison testified throughout the trial that

the contract obligated the Madsens to pay, not a minimum price, but the actual direct construction costs plus 10 percent. He also introduced the contract into evidence to establish, at least in part, that the contract was a "cost plus" contract. Therefore, Robison could not bind the Madsens to an admission he never relied upon and, in fact, contradicted during trial.

Finally, we must comment upon the trial court's use of stopwatches to keep track of each party's allotted time. The court apparently allowed each party $10\frac{1}{2}$ hours to present his or their case, including cross-examination and arguments on objections, and used stopwatches to monitor the amount of time that had been used by each side. It is undisputed that a trial judge has broad discretion over the conduct of a trial. *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991). In this case, the parties have not suggested, nor have we found, that the district court abused its discretion by unduly limiting the parties' presentation of evidence with the use of stopwatches. However, we caution trial courts against the use of stopwatches or other similar limitations on time. Such methods of controlling the course of trial might well overly restrict the presentation of evidence and could prejudice a party's right to fully present that party's case.

## CONCLUSION

Upon de novo review of the record, we find no merit to Robison's argument that the Madsens made a judicial admission as to a minimum contract price of $191,966. Treating as admitted the truth of all relevant evidence favorable to Robison and giving Robison the benefit of all permissible inferences deducible from the properly admitted evidence, we further find from our de novo review of the record that Robison failed to produce sufficient evidence to establish a prima facie case of the amount owed him. The district court's denial of Robison's motion for new trial was neither erroneously prejudicial nor an abuse of discretion. Therefore, the decision of the district court is affirmed.

AFFIRMED.

WHITE, J., participating on briefs.