748 N.W.2d 28 (2008)
275 Neb. 530
Nelvadene MALCHOW, appellant and cross-appellee,
v.
Dean L. DOYLE, D.D.S., appellee and cross-appellant.
No. S-06-219.
Supreme Court of Nebraska.
April 24, 2008.
*32 Vincent M. Powers, of Vincent M. Powers & Associates, and, on brief, Alan L. Plessman, Lincoln, for appellant.
Patrick G. Vipond, Kyle Wallor, and John M. Walker, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*29 PER CURIAM.

NATURE OF CASE
Nelvadene Malchow brought this professional negligence action against Dean L. Doyle, D.D.S., alleging that she sustained injuries as the result of Doyle's insertion and later removal of a dental implant. A jury returned a verdict for Doyle, and the district court overruled Malchow's motion for judgment notwithstanding the verdict or for new trial and Doyle's motion for reconsideration. Malchow appeals, and Doyle has filed a cross-appeal.

FACTS
Doyle was Malchow's dentist, and in July 1997, he placed a metal device in Malchow's mouth that would allow the permanent implant of prosthetic teeth. The device was embedded underneath the gum tissue into and along her lower jaw. Malchow suffered from swelling, pain, and repeated infections for several years because Doyle allegedly improperly inserted the device.
On February 26, 2002, during removal of part of the dental implant, Doyle fractured the right side of Malchow's mandible. He referred Malchow to the University of Nebraska College of Dentistry in Lincoln, Nebraska, for further dental and medical care. She underwent emergency surgery and was then referred to the University of Nebraska Medical Center in Omaha, Nebraska. There, she underwent additional surgeries to repair the fracture and reconstruct the mandible.
Malchow brought this action, alleging that Doyle was negligent in failing to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession; that Doyle should have advised her that she was not a proper candidate for the dental implant; and that he failed to inform her of the risks associated with the implantation. She also claimed that Doyle failed to exercise reasonable care and skill in removing the implant, causing further injury, including the fracture of Malchow's mandible. In her amended complaint, Malchow sought recovery for hospital, medical, and dental costs and services that exceeded $145,000.
In his answer to Malchow's amended complaint, Doyle asserted that Malchow's claims were barred by the statute of limitations, that the complaint failed to state a claim upon which relief could be granted, and that he had met the applicable standard of care in the treatment rendered to Malchow.
After a 5-day trial, the jury returned a verdict in favor of Doyle, finding that Malchow *33 had not met her burden of proof. Malchow moved for new trial and judgment notwithstanding the verdict, and Doyle filed a motion for reconsideration. The district court overruled the motions. Malchow appeals, and Doyle cross-appeals.

ASSIGNMENTS OF ERROR
Malchow assigns the following errors: The district court abused its discretion (1) in sustaining Doyle's renewed motion to continue the trial on September 26, 2005; (2) in "the number of hours during which the court was in session, conducting the trial"; (3) in overruling the motions for mistrial made by Malchow during the trial; (4) in refusing to assemble the jury during the hearing on the motion for new trial in order to investigate claims of juror misconduct; and (5) in overruling Malchow's motion for judgment notwithstanding the verdict or for new trial.
On cross-appeal, Doyle claims the district court erred (1) in ordering Doyle to pay for the time two of Malchow's experts spent preparing for depositions and (2) in ordering Doyle to pay sanctions with respect to the failure to produce certain models of Malchow's dental implant that were in Doyle's possession.

STANDARD OF REVIEW
[1] A trial judge has broad discretion over the general conduct of a trial; therefore, an appellate court reviews complaints about trial conduct for abuse of discretion. See Eicher v. Mid America Fin. Invest. Corp., 270 Neb. 370, 702 N.W.2d 792 (2005).
[2] A motion for mistrial is directed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of abuse of that discretion. Genthon v. Kratville, 270 Neb. 74, 701 N.W.2d 334 (2005).
[3] To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. Olivotto v. DeMarco Bros. Co., 273 Neb. 672, 732 N.W.2d 354 (2007).

ANALYSIS

CONDUCT OF TRIAL
[4] Malchow argues that the district court imposed "an unnecessary, unreasonably ambitious and daunting time table [sic] for the trial," which denied her a fair trial, and that the parties, the jury, and counsel "became prisoners to the trial court's unreasonable trial schedule." See brief for appellant at 22-23. Malchow contends that the trial schedule prejudiced the jury against her.
It is helpful in this case to review the pretrial history. Malchow's original complaint was filed on August 19, 2003. After many disputes regarding discovery, the district court scheduled a pretrial conference for August 15, 2005, and the trial was originally scheduled for September 26 to October 3. Malchow's pretrial memorandum listed 40 witnesses and 123 exhibits. Doyle's pretrial memorandum listed 10 witnesses and 128 exhibits. On September 6, the court, on its own motion, set a cutoff date of September 9 for further pretrial motions.
On September 9, 2005, Doyle moved to continue the trial, claiming that Malchow was scheduled for additional surgery on September 13 and that the surgery could affect her appearance and her speech at trial, which would unfairly prejudice Doyle. The district court denied Doyle's motion to continue the trial, as well as his pending request for a separate trial on the statute of limitations issue.
On September 20, 2005, Doyle filed another motion to continue the trial based on *34 issues related to his health. Doyle had previously suffered a heart attack and had recently been experiencing chest and back pain. A heart catheter procedure revealed a blockage in his heart, and his cardiologist recommended that Doyle have stents inserted to correct the blockage. The procedure was scheduled for September 21, and Doyle claimed that his cardiologist ordered him not be placed under the stress of trial for at least 2 weeks following that date.
The district court initially denied Doyle's motions for continuance, but after receiving testimony from Doyle's cardiologist, the court granted the motion because of serious health risks to Doyle. The court then set the trial to begin on Monday, October 24, 2005. The court allotted 1 week for trial, with jury selection scheduled for October 18.
When jury selection began, the district court informed the prospective jurors that the trial would begin on Monday, October 24, 2005, at 8 a.m. The court stated: "We're starting somewhat early in an effort to get the case done in a week. This case is going to take some time, and hopefully, it will be done within next week." After the jury had been selected, the court and counsel discussed the trial schedule. The court stated that it was "going to push this case along," beginning at 8 a.m. and running until 6 p.m. if necessary. Malchow had previously told the court that her case in chief would be concluded on Wednesday, October 26, but Malchow's counsel asked whether she would be able to call one of her expert witnesses the following week. The expert would not be present until Monday, October 31. The court stated that although it was willing to consider going into the next week, it was reluctant to do so.
Trial began at 8:05 a.m. on Monday, October 24, 2005, and continued until 8:58 p.m. On Tuesday, proceedings began at 8:19 a.m. and continued until 6:16 p.m. The trial resumed at 8:08 a.m. on Wednesday and continued until 10:05 p.m. On Thursday, trial began at 8:33 a.m. and adjourned at 8:45 p.m. Friday's session began at 8:01 a.m. and lasted until 9:48 p.m. Thus, the district court allotted approximately 62 hours for the trial, including recesses, over a 5-day period.
In its posttrial order, the district court noted that the time allotted for trial had been discussed extensively at a hearing on the day of jury selection, October 18, 2005.
[I]t is obvious from those proceedings that previous discussions had occurred. It is clear from that transcription, that [Malchow] had represented that her case in chief would be concluded on Wednesday. [Malchow's] counsel inquired about the possibility of going into the following week, and the Court did not foreclose that possibility, but made it clear that it was very reluctant to go into the following week, and the parties should expect to conclude within the week. The Court indicated that trial days would start earlier and go later than usual, if necessary, and that [Malchow] should plan on having rebuttal witnesses available Friday afternoon....
[Malchow] took far longer in presenting her case in chief than what had been represented to the Court. Although there were numerous bench conferences, the court reporter's affidavit shows that they were quite short. Throughout the trial, the Court inquired how long proceedings would take, and the time estimates given by [Malchow's] counsel in response varied substantially, without any apparent reason, from time actually consumed. The direct examination by [Malchow] of Dr. Doyle was very slow-paced and repetitive. The Court made every reasonable effort to give [Malchow] *35 the same amount of time which had been allocated prior to the continuance, and [Malchow] in fact was able to use far more time than was estimated.
[5] Malchow does not offer any precedent to support her claim that the district court imposed a daunting trial schedule on the parties. She cites only this court's definition of a judicial abuse of discretion. We have held that a trial judge has broad discretion over the general conduct of a trial. See Eicher v. Mid America Fin. Invest. Corp., 270 Neb. 370, 702 N.W.2d 792 (2005). We therefore review Malchow's claims for an abuse of discretion. The record does not establish that the district court abused its discretion by depriving Malchow of a fair trial through the scheduling of the proceedings, unless it can be shown that the jury was prejudiced because the trial days were longer than usual.
We note that on the fourth day of trial, the district court expressed its frustration at the time the trial was taking and stated it was concerned that the time estimates given by Malchow had been incorrect. Doyle moved for a mistrial, noting that there was insufficient time left for two expert witnesses he had expected to call that day. Doyle's counsel stated that Malchow had taken "inordinate amounts of time with everything ... to slow this case down," delay Doyle's experts, and extend the trial into the following week to allow one of Malchow's experts to testify.
Malchow's counsel responded:
That isn't true any longer, Your Honor.... The motivation is incorrect. At one time it was, but it's not the motivation for us trying this case at the pace we are, and we don't have any intention of delaying anything for any purpose at all except to make sure the evidence gets in that we want to present....
(Emphasis supplied.)
The above statement implied that Malchow's counsel had previously attempted to extend the time of trial in order to call an expert witness who was not available until the following week. The district court allowed more time for Malchow's case in chief than had originally been discussed among the parties. Under the circumstances presented in this case, Malchow was responsible for the extra time that was required of the jury. We conclude that the court did not abuse its discretion in extending the length of the trial days. This assignment of error has no merit.

MOTIONS FOR MISTRIAL
[6-8] Malchow's argument concerning the conduct of the trial is also expressed in her assignment of error claiming that the district court abused its discretion in overruling each of the several motions for mistrial made during the trial. A motion for mistrial is directed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of abuse of that discretion. Genthon v. Kratville, 270 Neb. 74, 701 N.W.2d 334 (2005). A mistrial is appropriate when an event occurs during the course of a trial which is of such a nature that its damaging effects would prevent a fair trial. Id. Events which may require the granting of a mistrial may include egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters. See id.
Malchow argues that the length of the trial days was so daunting that the jurors were prejudiced against her. We have noted that the length of the trial days was related to Malchow's presentation of the evidence. Some of Malchow's motions for *36 mistrial, however, did not specifically relate to the length of the trial days or the timing of the trial. The first motion, made on the third day of trial, was based on the district court's "preventing [Malchow] from putting on evidence to impeach ... Doyle's evidence and from putting on evidence concerning the facts in this case that occurred on the date of the severe injury to .. . Malchow." On the fourth day, Malchow moved for mistrial because she felt that due to the time constrictions imposed by the court, she had not been able to present the evidence that she needed to fully meet her burden of proof.
Malchow offers no authority to support her contention that the trial schedule prevented her from having a fair trial. As noted earlier, a trial judge has broad discretion over the general conduct of a trial, and we review complaints about the conduct of a trial for abuse of discretion. See Eicher v. Mid America Fin, Invest. Corp., 270 Neb. 370, 702 N.W.2d 792 (2005).
This court has previously addressed the imposition of time limits on a trial in Robison v. Madsen, 246 Neb. 22, 516 N.W.2d 594 (1994), in which the trial court used stopwatches to keep track of the time allotted for the parties to present their case, including cross-examination and arguments on objections. Each had been given 10½ hours. Although the issue was not raised by the parties, we noted that a trial judge has broad discretion over the conduct of a trial. We cautioned trial courts against the use of stopwatches or other similar limitations on time. "Such methods of controlling the course of trial might well overly restrict the presentation of evidence and could prejudice a party's right to fully present that party's case." Id. at 30, 516 N.W.2d at 599. The Nebraska Court of Appeals has also stated, "Arbitrary time limits can easily become the enemy of justice in our adversarial system." Gohl v. Gohl, 13 Neb.App. 685, 702, 700 N.W.2d 625, 638 (2005).
In the case at bar, the trial was conducted over a 5-day period and 62 hours were devoted to the trial. The record does not show that either party was restricted in the presentation of its evidence. Malchow has not demonstrated that she was prejudiced in presenting her case based on the length of each trial day, and she is not entitled to an inference that the jury resented her because of the length of the trial. We conclude that the district court did not arbitrarily place time limits on either party or restrict the presentation of evidence. Thus, the court did not abuse its discretion in overruling any motions for mistrial on the basis of the conduct of the trial.

JUROR MISCONDUCT
[9] Malchow claims the district court abused its discretion in refusing to assemble the jury to investigate claims of juror misconduct. At the hearing on the motion for new trial, Malchow offered into evidence the affidavits of three jurors, and Doyle objected based upon Neb.Rev.Stat. § 27-606 (Reissue 1995), which generally precludes a juror from testifying as to any matter or statement occurring during the course of the jury's deliberations. The court sustained Doyle's objection and refused to receive the evidence.
[10] We note that Malchow did not assign as error the court's refusal to receive the affidavits. Errors argued but not assigned will not be considered on appeal. County of Sarpy v. City of Gretna, 273 Neb. 92, 727 N.W.2d 690 (2007). Thus, we do not consider the ruling on the affidavits.
Malchow's assignment of error claims that the district court abused its discretion in refusing to have the jurors return after trial to be examined for possible juror *37 misconduct. The motion for new trial submitted by Malchow did not request such a hearing, but during the hearing on the motion for new trial, Malchow asked the court to gather the jurors to question them about the verdict. This assignment of error appears to be based on Malchow's claim that the jurors were unduly influenced by the jury foreperson, who allegedly repeatedly told the jury that the proof had to be beyond a reasonable doubt to find in Malchow's favor.
Section 27-606(2) precludes a juror testifying "as to any matter or statement occurring during the course of the jury's deliberations ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention." Malchow claims that the jury foreperson's incorrect statement concerning the burden of proof was extraneous information and did not relate to any statement made during the jury's deliberations. Therefore, Malchow asserts that the jurors should have been able to testify about it.
In Leavitt v. Magid, 257 Neb. 440, 598 N.W.2d 722 (1999), the appellant claimed juror misconduct because one of the jurors, an attorney, had allegedly intimidated the other jurors concerning the definition of proximate cause. The appellant alleged that the attorney-juror's legal knowledge constituted extraneous prejudicial information within the meaning of § 27-606. Conflicting affidavits were offered. We held that the juror's general legal knowledge was personal knowledge not directly related to the litigation and was not extraneous information within the meaning of § 27-606.
[11, 12] Here, it is alleged that the foreperson incorrectly stated the burden of proof. A juror's knowledge about the burden of proof is personal knowledge that is not directly related to the litigation at issue and is not extraneous information. The jury was instructed by the court that Malchow's burden of proof was to show, by the greater weight of the evidence, that Doyle was negligent. Jury instructions do not constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence. Domjan v. Faith Regional Health Servs., 273 Neb. 877, 735 N.W.2d 355 (2007). The jury instructions were correct, and there is no prejudicial error evident with regard to the instructions to the jury.
Malchow was not entitled to an evidentiary hearing to investigate the allegations of juror misconduct. The jurors' affidavits were not admissible, and Malchow's claims of misconduct were unsupported by any evidence. See Leavitt v. Magid, supra. The district court did not abuse its discretion in failing to conduct a hearing to question the jurors about their verdict, and this assignment of error has no merit.

REMAINING ASSIGNMENTS OF ERROR
[13] Malchow assigns as error the district court's sustaining Doyle's renewed motion to continue the trial on September 26, 2005, and its overruling Malchow's motion for judgment notwithstanding the verdict or for new trial. However, Malchow does not argue these assignments of error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. Olivotto v. DeMarco Bros. Co., 273 Neb. 672, 732 N.W.2d 354 (2007).

CROSS-APPEAL
On cross-appeal, Doyle asserts that the district court erred (1) in ordering Doyle to pay for the deposition preparation time *38 of two of Malchow's experts, Drs. Richard Burton and Michael Miloro, and (2) in ordering Doyle to pay sanctions with respect to the failure to produce certain models of Malchow's dental implant that were in Doyle's possession.

STANDARD OF REVIEW
[14, 15] On appellate review, decisions regarding discovery are generally reviewed under an abuse of discretion standard. In re Guardianship & Conservatorship of Borowiak, 10 Neb.App. 22, 624 N.W.2d 72 (2001). See, also, In re Estate of Jeffrey B., 268 Neb. 761, 688 N.W.2d 135 (2004). The standard of review of a trial court's determination of a request for sanctions is whether the trial court abused its discretion. Holste v. Burlington Northern RR. Co., 256 Neb. 713, 592 N.W.2d 894 (1999).

DEPOSITION EXPENSES
On February 17, 2005, Malchow moved to compel Doyle to pay the fees for certain expert witnesses to prepare their responses to Doyle's discovery pursuant to Neb. Ct. R. of Discovery 37 (rev.2000). The district court had previously overruled Malchow's objections to several interrogatories submitted by Doyle to Malchow's expert witnesses. However, the court had ordered Doyle to pay Malchow's expert witnesses to respond to said discovery if, after being informed of the estimated charges, Doyle still wished to obtain the responses. Malchow provided the required estimation of charges, but received no response from Doyle.
In her motion to compel, Malchow claimed that defense counsel then served notices of deposition on two of Malchow's expert witnesses, Burton and Dr. J. Bruce Bavitz, seeking the same information as had previously been sought through the written interrogatories. Malchow claimed that by deposing such witnesses, Doyle was attempting to obtain the same information by deposition that he had previously sought through written discovery. Burton's deposition was held on December 28, 2004, and Bavitz' deposition was held on January 12, 2005.
Burton sent Doyle a bill of $3,000 for his deposition and his preparation time, including his time to compile answers to a list of questions that were asked of him in the notice of deposition. Doyle's attorney paid $2,000 but refused to pay the other $1,000, which was based on Burton's charge for 4 hours at $250 per hour to review all materials, answer the interrogatories, and conduct other research in preparation for the deposition. Doyle argued he should not be required to pay for the trial preparation of Malchow's expert.
Malchow alleged that Doyle was attempting to circumvent the district court's prior order by restating the same questions in a notice of deposition to the expert witness rather than by submitting written interrogatories to Malchow. In addition, because the issue had previously been ruled on in the court's order of December 12, 2003, Malchow claimed that Doyle should be ordered to pay Malchow's attorney fees incurred in filing the motion to compel.
[16] The district court ordered Doyle to pay the entire amount billed by Burton, which included his preparation time for answering the interrogatories and participating in the deposition. The court overruled Malchow's request for attorney fees. Under the circumstances presented, we conclude the court did not abuse its discretion in ordering Doyle to pay Burton's charges of $3,000.
[17] Each party moved for a protective order regarding the fees charged by Miloro. Doyle had been advised that several of Malchow's expert witnesses required a fee *39 of $1,000 to $1,500 at least 1 week in advance of the deposition, based on a rate of $500 to $750 per hour. Miloro's deposition was scheduled for 2 hours on August 29, 2005, but Miloro canceled it when Doyle did not pay $1,500 at least 1 week in advance. Doyle alleged that Miloro's charges were unreasonable.
Subsequent to the cancellation of his deposition, Miloro demanded a total of $7,500. In addition to $1,500 for the deposition, Miloro claimed he had incurred 12 hours of preparation between August 27 and 28 reviewing records, and he charged $500 per hour for preparation. Miloro stated that on Friday, August 26, 2005, his office left a voicemail message for Malchow's counsel that the $1,500 advance fee had not been received. In spite of not being paid, Miloro said he felt it necessary to review the records in the event that all parties appeared for the deposition. Miloro claimed he had spent 12 hours over the weekend reviewing the records. The district court ordered that Doyle was responsible for Miloro's "time for the deposition to be taken the morning of August 29," but which did not occur because of nonpayment by Doyle. The court also overruled Doyle's motion for a protective order.
Doyle subsequently filed an application for leave to file an original action in this court seeking a writ of mandamus relating in part to the $6,000 charge for Miloro's deposition preparation time. We denied Doyle's application to file an original action.
On September 23, 2005, Malchow again brought the issue of Miloro's $7,500 charge before the district court. The court then inquired of Malchow's counsel whether there would be a problem with Miloro's appearing for trial because he had not been paid. Counsel responded that Miloro would not appear until the bill was paid. "We've paid him a lot of money in the past. He's been paid for every minute that we've seen him before." Cocounsel then added, "We've paid him in advance for his trial appearance, but he hasn't [been] paid the $7[,]500." Miloro was scheduled to appear on the third day of the trial. Counsel stated that Miloro would fill up his calendar if he was not paid the $7,500 immediately and that he would not testify at trial, which was scheduled at that time to begin the following week. The court ordered Doyle to pay $7,500 to Miloro no later than 5 p.m. on Monday, September 26.
The record indicates that Miloro had spent considerable time with Malchow's lawyers prior to trial and that he had been paid for his time, which according to counsel was "a lot of money." Miloro had been paid by Malchow for his trial appearance. The remaining question is whether Doyle should have been required to pay Miloro for 12 hours of preparation for a 2-hour deposition that was requested by Doyle but was never taken because Miloro was not paid in advance.
This court has not previously addressed the question of payment of an expert witness for time spent in preparation for a deposition. The Nebraska discovery rules for civil cases are, with some modification, based on the federal rules of discovery. See, Neb. Ct. R. of Discovery 26(b)(4) (rev. 2001); Christianson v. Educational Serv. Unit No. 16, 243 Neb. 553, 501 N.W.2d 281 (1993).
Doyle relies on Rhee v. Witco Chemical Corp., 126 F.R.D. 45 (N.D.Ill.1989), which held that a deposing party need not compensate the opposing party's expert for time spent preparing for a deposition. The court noted that the preparation time included not only the expert's review of his or her conclusions and the basis for the opinion, but also consultation between counsel and the expert to prepare the expert for testifying. "An expert's deposition *40 is in part a dress rehearsal for his testimony at trial and thus his preparation is part of trial preparation. One party need not pay for the other's trial preparation." Id. at 47.
Malchow relies on Hose v. Chicago and North Western Transp. Co., 154 F.R.D. 222 (S.D.Iowa 1994), in which the railroad objected to the plaintiff's expert witness' charging the railroad for time spent reviewing medical records in preparation for a deposition. The court distinguished Rhee, in part, because the expert in Hose was the plaintiff's treating neurologist and was not retained specifically for the litigation. In addition, the expert was not seeking compensation for any time spent in conference with plaintiff's counsel, but merely for time spent reviewing the plaintiff's medical records. The court noted that compensating the expert for time spent reviewing medical records would speed along the deposition process and would save costs over having the expert refresh his memory during the deposition using the medical records.
Other cases represent a split of authority regarding payment of an expert's time in preparing for a deposition. In M.T. McBrian, Inc. v. Liebert Corp., 173 F.R.D. 491 (N.D.Ill.1997), the court stated that as a general rule, Fed.R.Civ.P. 26(b)(4)(C) does not require the deposing party to bear the expense of the expert's deposition preparation time. M.T. McBrian, Inc. was a simple contract case between two parties, and the court stated that without more compelling circumstances, time spent preparing for a deposition should fall on the party responding to a discovery request. See, also, Benjamin v. Gloz, 130 F.R.D. 455 (D.Colo.1990) (compensation denied for time spent by expert preparing for deposition).
There are exceptions where the case is complex or where there has been a considerable lapse of time between an expert's work on a case and the date of the actual deposition. In S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 154 F.R.D. 212 (E.D.Wis.1994), the court found that the issues were complex and that the deposition would occur 4 to 5 months after the expert prepared his report. It ordered the party responding to the discovery to pay for 5 hours of the expert's deposition preparation time. See, also, E.E.O.C. v. Sears, Roebuck and Co., 138 F.R.D. 523 (N.D.Ill.1991) (cost of time spent for experts to review voluminous documents may be recovered in complex case, but range of activities performed by experts for which party can be reimbursed is very narrow).
[18, 19] The question of whether time spent by Miloro in responding to discovery should include his time preparing for a deposition is left to the discretion of the trial court. The control of discovery is a matter for judicial discretion. In re Estate of Jeffrey B., 268 Neb. 761, 688 N.W.2d 135 (2004). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007). In this case, Doyle did not pay certain specified fees to Miloro in advance as agreed upon, which resulted in the deposition's being canceled.
We conclude that the district court abused its discretion in ordering Doyle to pay the $6,000 charged by Miloro as compensation for time he spent preparing for the deposition. The facts herein are similar to those in Rhee v. Witco Chemical Corp., 126 F.R.D. 45 (N.D.Ill.1989). Miloro was Malchow's witness, and he was scheduled to testify on the third day of the *41 trial. Malchow's counsel stated that he had spent considerable time with Miloro and that Miloro had been paid for every minute of his time. Whether Miloro needed to spend 12 additional hours to prepare for a 2-hour discovery deposition by Doyle is not the question, but, rather, whether Doyle should have been ordered to pay such charges. We conclude that the district court's order on this issue was in error. We therefore modify that portion of the judgment in order to tax $6,000 as additional costs to Malchow.

SANCTIONS
[20] On December 15, 2003, Malchow issued Doyle a notice for deposition and a subpoena duces tecum, asking Doyle to provide the following materials: "[a]ll records, documents, billings, and other tangible things in your possession or control" pertaining to Malchow, including but not limited to x rays.
As Doyle's deposition began on December 19, 2003, he was asked whether he brought those items requested in the subpoena duces tecum. Doyle stated that he had brought all documents pertaining to Malchow, x rays, and the instruments used for the surgery. Later in the deposition, Doyle mentioned that models of Malchow's jawbone had been made between the first and second surgeries. When a second deposition of Doyle was taken on April 8, 2005, he was asked if he was in possession of any models, and he indicated he would have to check. Dental impressions were eventually provided to Malchow's counsel on April 13.
In Malchow's motion for sanctions under rule 37, she alleged that she had learned on January 24, 2005, that an exhibit contained the "right strut of the Malchow subperiosteal implant," which had never before been produced by Doyle or properly made a part of the contents of the exhibit. Malchow claimed that the strut was added to the exhibit while it was in the possession of Doyle or his counsel. Malchow claimed that at Doyle's second deposition on April 8, the right strut of Malchow's implant was produced. And at a third deposition on June 13, models of Malchow's jaw and implant device were produced.
In her motion for sanctions, Malchow asked the district court to find that Doyle and his counsel were in contempt and to order that they purge themselves of contempt by either (1) paying Malchow's counsel full compensation for the time expended as a result of taking Doyle's deposition on three occasions, (2) forfeiting the right to refer to or use the strut or models as evidence at trial, or (3) admonishing and instructing Doyle's expert witnesses that their opinions should not be based on the strut or models.
In the alternative, Malchow sought payment for the time expended in revisiting all of Malchow's expert witnesses to allow them to review the strut and models; payment for the time spent taking the depositions of Bavitz and Burton, who were not allowed to view the strut and models prior to their depositions; and forfeiture of Doyle's right to use the depositions of Bavitz and Burton as substantive evidence or as impeachment at trial.
The district court found that Doyle was negligent in failing to produce the strut and models related to his treatment of Malchow at either of his depositions. Pursuant to the subpoena duces tecum, Doyle was required to bring all "tangible things" to the deposition. The court found it would be an extreme remedy to exclude the models from use but found it appropriate to impose sanctions in the amount of one-half of the costs of the subsequent depositions and Malchow's attorneys' preparation time for those depositions. Doyle was ordered to pay $7,717.50 in attorney fees and $685.58 in expenses to Malchow's counsel as sanctions by August 31, 2005.
*42 After the trial, Doyle moved the district court to reconsider its sanctions. He argued there was no testimony that the models changed the opinion of any expert or that any expert spent a great deal of time looking at the models to reevaluate his opinion. Doyle claimed the sanctions were excessive and asked that they be set aside because there was no prejudice to Malchow. The court overruled this motion for reconsideration.
Doyle argues that the district court abused its discretion. He claims that there was no prejudice to Malchow because the expert witnesses testified that their opinions did not change after they saw the models. Burton stated in a second deposition that none of his opinions had changed following his review of the models and implant. Bavitz stated at trial that he had not changed his opinions based on his review of the models.
The subpoena duces tecum directed Doyle to bring with him "[a]ll records, documents, billings, and other tangible things in your possession or control" pertaining to Malchow, including but not limited to x rays. (Emphasis supplied.) The models would certainly fall within the definition of "other tangible things." Thus, the district court did not abuse its discretion in sanctioning Doyle for the failure to provide the models until 16 months after the subpoena duces tecum was issued. This assignment of error has no merit.

CONCLUSION
The judgment of the district court is affirmed as modified in accordance with this opinion.
AFFIRMED AS MODIFIED.
CONNOLLY, J., participating on briefs.