Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/10/2020 08:07 AM CDT

Tanner Goes, doing business as Goes Construction,
appellee, v. Eric Vogler and Destini Vogler,
husband and wife, appellants.

Franklin Drywall, Inc., a Nebraska corporation,
appellee, v. Eric Vogler and Destini Vogler,
husband and wife, appellants, and
FBM Lincoln et al., appellees.

___ N.W.2d ___

Filed January 17, 2020.    Nos. S-18-1201, S-18-1203.

1. **Mechanics' Liens: Foreclosure: Equity.** An action to foreclose a construction lien is one grounded in equity.
2. **Equity: Appeal and Error.** In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Breach of Contract: Damages.** A suit for damages arising from breach of a contract presents an action at law.
4. **Contracts.** A cost-plus contract as generally understood is one where the total cost to the contractor represents the whole payment to be made to him or her, plus a stated percentage of profit.
5. **Contracts: Mechanics' Liens.** Under cost-plus contracts, the amount owing the builder should be computed on the basis of the amount actually spent for labor, materials, and supplies which go into and become a part of the finished structure, including the amounts paid to subcontractors.
6. ____: ____. In any cost-plus contract, there is an implicit understanding between the parties that the cost must be reasonable and proper.

Contractors do not have a fiduciary duty under a cost-plus contract as a matter of law, other than those obligations already required by law and the contract.

Appeal from the District Court for Cass County: Michael A. Smith, Judge. Affirmed.

Damien J. Wright and Natalie M. Hein, of Welch Law Firm, P.C., for appellants.

James B. Luers, of Cada, Cada, Hoffman & Jewson, for appellee Tanner Goes.

Troy J. Bird, of Hoppe Law Firm, L.L.C., for appellee Franklin Drywall, Inc.

Timothy W. Nelsen, of Fankhouser, Nelsen, Werts, Ziskey & Merwin, P.C., L.L.O., for appellee Shelton Brothers Construction, LLC.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

The appellants, Eric Vogler and Destini Vogler, contracted with Shelton Brothers Construction, LLC (Shelton), for the construction of a residential home. Shelton and two of its subcontractors, Tanner Goes, doing business as Goes Construction (Goes), and Franklin Drywall, Inc. (Franklin), subsequently filed construction liens and brought contract suits claiming unpaid balances for construction services rendered. Following trial on the consolidated cases, the district court determined that the construction contract between the Voglers and Shelton was a cost-plus agreement, that defects in workmanship were punch list items and not a breach by Shelton, and that the Voglers committed the first material breach of contract and owed damages to the contractor and subcontractors. The

Voglers appeal, and we ordered the appeals, S-18-1201 and S-18-1203, consolidated for appeal. On appeal, the Voglers claim, inter alia, that the contract was a fixed-price contract breached by Shelton and that, alternatively, even under a cost-plus contract, Shelton breached a fiduciary duty to provide a full accounting for its bills to the Voglers when it requested draw payments. We affirm with respect to all parties and claims.

FACTS

After the Voglers' home was destroyed by fire, they hired Shelton to construct a new home in Nehawka, Nebraska, on the existing foundation. They hired Shelton as their general contractor. After months of negotiating and discussion, the parties entered into a contract in October 2015, memorialized by exhibits 2, 37, and 47 in the record (the contract). Although paragraph 4 of exhibit 47 states that it is a "cost plus contract" with specific fees for overhead, warranty, and profit to Shelton, elsewhere the contract states that "[t]he agreed upon price is $282,000.00." The contract called for an initial payment of $28,000, with progress payments made as monthly draws. Under the contract, Shelton would be able to request a monthly draw, subject to approval by the Voglers, "as needed to pay for materials and services." The payments were to be made within 10 days of the request.

Shelton and its subcontractors began work in October 2015, and as work progressed, various changes were made to the arrangement contemplated by the contract and the scope of work. One arrangement change was the fact that the Voglers and Shelton mutually waived the requirement of written change orders. One scope of work change was that framing for walls was adjusted and the foundation extended by 2 feet—resulting in modifications to the roof trusses and other features. Some of the changes caused spinoff delays and difficulties scheduling subcontractors. The Voglers became concerned with the lack of progress and communication by Shelton.

The Voglers made the initial downpayment and the first two requested draws. Shelton requested a third draw on February 18, 2016, in the amount of $48,972.54. Alleging shoddy workmanship, a fear that Shelton would not finish the project, and a lack of accounting, the Voglers made only a partial payment on one of the draws requested by Shelton. The district court found that only $19,875.40 was paid on the third draw and that the payments were "as late as March 13, 2016."

The Voglers contend that when making its draw requests, Shelton attached some, but not all, of the invoices from subcontractors and suppliers, and the Voglers expressed concern as to how their money was being spent. In February 2016, Eric Vogler emailed Shelton requesting an accounting for the initial $28,000 downpayment. Shelton did not provide itemizations or documentation of expenses to the Voglers' satisfaction. The Voglers' payments did not equal the draw requests, and Shelton terminated the contract. The Voglers hired another contractor to finish the home, and Shelton, Franklin, and Goes all filed construction liens with varying technical success. The three moved to foreclose upon the liens and asserted contract claims. Two consolidated cases encompassing all parties and claims proceeded to trial.

In orders filed on November 26, 2018, the district court found that the Voglers withheld payment because of their concerns about the quality of the work, that the project would not be completed for the price stated in the contract, and that the work would not be completed on time. The district court stated that "[t]he justification for the Voglers' failure to make timely payments hinges on their assertions that the parties had a fixed-price contract and that the contract required written change orders." The district court concluded that the contract was not ambiguous and that it was for a cost-plus contract price, not a fixed cost contract price. Although the parties did not sign written change orders regarding changes to the project, the district court found that the parties' mutual

conduct amounted to a waiver of the provisions in the contract requiring written change orders. The court determined that any deficiencies in the quality of the work were punch list items, which would have been cured in the ordinary course of completion of the work, and therefore were not a breach of contract by Shelton. Accordingly, the district court found that the Voglers' suspension of payment constituted a breach of contract.

Although FBM Lincoln was served, it did not enter an appearance or assert an interest in the real estate, and the district court found any interest of FBM Lincoln in the real estate would not be recognized.

In case No. S-18-1201, the district court entered judgment against the Voglers in the amount of $64,603.42, wherein Goes was awarded $26,678 and Shelton received the remainder. In the consolidated case, case No. S-18-1203, the trial court found that Franklin's lien was tardy and unenforceable pursuant to Neb. Rev. Stat. § 52-140 (Reissue 2010); however, the district court repeated its award against the Voglers and in favor of Shelton, but allocated $15,000 of Shelton's award to Franklin based on Franklin's successful breach of contract claim against Shelton. The Voglers appeal.

## ASSIGNMENTS OF ERROR

On appeal, the Voglers assert, restated, that the district court erred when it (1) characterized the contract as a cost-plus contract, (2) found that the Voglers committed the first material breach of the contract with Shelton, and (3) awarded damages to Shelton, Franklin, and Goes.

## STANDARDS OF REVIEW

[1,2] An action to foreclose a construction lien is one grounded in equity. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial

court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

[3] A suit for damages arising from breach of a contract presents an action at law. *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018).

## ANALYSIS

The district court and parties have treated this case essentially as one arising from breach of contract. And although the record shows construction liens were filed, we believe the appropriate framework is predominantly a contract action and review the matter accordingly. See *Tilt-Up Concrete v. State City/Federal*, 261 Neb. 64, 621 N.W.2d 502 (2001). With respect to breach, the central issue is whether the Voglers breached the contract first by failing to make draw payments to Shelton or whether Shelton breached the contract first under various theories advanced by the Voglers. Based on the language of the contract and the evidence at trial, we affirm the orders of the district court which found that the Voglers breached the contract, dismissed the Voglers' cross-claims, and entered money judgments in favor of Shelton, Franklin, and Goes.

On appeal, the Voglers contend that the district court erred when it concluded that the agreement was a cost-plus contract rather than a fixed-price contract. They argue, in the alternative, that even assuming the agreement was a cost-plus contract, Shelton breached its duty to provide information to the Voglers regarding the project cost and budget. They also argue that they are a "[p]rotected party" under Neb. Rev. Stat. § 52-129 (Reissue 2010) and that Shelton, and by extension Franklin, can only recover the difference between the prime contract price and the amount the Voglers had already paid.

*The Parties Executed a*
*Cost-Plus Contract.*

The Voglers' first claim on appeal is that the district court erred when it characterized the contract as a cost-plus contract. Referring to language in paragraph 4 of the contract, which stated that "[t]he agreed upon price is \$282,000.00," the Volgers maintain that the parties intended that the price of the house was fixed and limited to \$282,000. We conclude the district court did not err when it concluded that the agreement was a cost-plus contract, and we reject this assignment of error.

The contract language provided in significant part as follows:

> 4. The agreed upon price is \$282,000.00 to be paid in monthly draws as needed to pay for materials and services provided during the building process. The first monthly draw shall be \$28,000.00 and is due and payable upon signing of this contract. Additional draws to be applied on an as needed basis per month for services rendered and the balance of the contract will be 10% of the contract price at completion. All payments to be rendered from owner's bank to Nebraska Title Company which will in turn distribute money to vendors/contractors as allocated in draw submitted. *This contract is to be executed as a cost plus contract where all costs for the project will be presented to the homeowners and the builder's fees will be completed at 2% for warranty, 5% for overhead and 3% for profit or 10% of the total cost of all work performed.*

(Emphasis supplied.)

[4,5] We have stated that a "cost-plus contract as generally understood is one where the total cost to the contractor represents the whole payment to be made to him, plus a stated percentage of profit." *Grothe v. Erickson*, 157 Neb. 248, 251, 59 N.W.2d 368, 370 (1953). We have explained that under cost-plus contracts, the amount owing the builder should be computed on the basis of the amount actually spent

for labor, materials, and supplies which go into and become a part of the finished structure, including the amounts paid to subcontractors. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994).

As noted by the district court, the language of paragraph 4 of the contract, which we have highlighted above, explicitly states that the contract is a "cost plus contract," and it describes the allocation of additional fees for overhead, warranty, and profit. Such language is consistent with the general understanding of a cost-plus contract and inconsistent with a fixed-price contract. Taking the contract language as a whole, the district court did not err when it concluded that the agreement between the Voglers and Shelton was a cost-plus contract. We reject this assignment of error.

*No Special Fiduciary Duty of Builder*
*Under Cost-Plus Contract in the*
*Absence of Agreement.*

The Voglers claim that even assuming the parties were subject to a cost-plus contract, a contractor in a cost-plus contract has additional fiduciary duties to a homeowner as a matter of law, and that the district court erred by not explicitly discussing whether Shelton breached these duties and, consequently, the contract. As we noted above, we have stated that the "amount owing the builder should be computed on the basis of the amount actually spent for labor, materials, and supplies which go into and become a part of the finished structure, including the amounts paid to subcontractors." *Robison v. Madsen*, 246 Neb. at 27-28, 516 N.W.2d at 598. The Voglers contend that given the law just quoted, it necessarily follows that a contractor must provide prompt, detailed accountings of actual costs incurred before taking progress payments and, furthermore, must inform the homeowner of potential cost overruns. The Voglers overstate the obligations of a contractor in general and, given the contract, in this case in particular. We reject this assignment of error.

Although there is case law to suggest that occasionally a cost-plus arrangement may place additional burdens upon a contractor, this is typically recognized where the contract language provides that "the contractor accepts a 'relationship of trust and confidence established' between it and the owner." 2 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 6:81 at 641 (2002). For example, in a Maryland appellate case relied on by the Voglers, the contractor accepted a "'relationship of trust and confidence'" with the homeowners and explicitly agreed to further their interests by performing "'the Work . . . in the most . . . economical manner consistent with'" their interests and to "'keep . . . full and detail[ed] accounts.'" *Jones v. J.H. Hiser Constr. Co.*, 60 Md. App. 671, 676, 484 A.2d 302, 304 (1984). Given these provisions, the court held that there was a relationship of trust and confidence between the parties, i.e., a fiduciary relationship grounded in the explicit language of the contract. *Jones v. J.H. Hiser Constr. Co., supra*.

[6] The contract between the Voglers and Shelton does not explicitly contain language creating a fiduciary relationship. As a general matter, it has been observed and we agree that "'[i]n any cost-plus contract there is an implicit understanding between the parties that the cost must be reasonable and proper.'" *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 223 (Tenn. App. 2009) (quoting *Kerner v. Gilt*, 296 So. 2d 428 (La. App. 1974)). However, other than those already required by law and by the parties' contracts, we decline to impose further fiduciary duties on contractors as a matter of law.

Here, the cost-plus contract required that "all costs for the project will be presented to the homeowners and the builder's fees will be completed at . . . 10% of the total cost of all work performed." Under the contract, Shelton was required to present its actual costs to the Voglers to determine the builder's fee at completion. According to the contract, the progress draws were "to be paid in monthly draws as needed to pay

for materials and services." Contrary to the Voglers' argument, we do not read this provision as requiring only retrospective payments nor do we read this provision as requiring extensive accounting. Compare *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d at 222 (stating that contract language provided that each draw would be submitted with "'full back-up support for all amounts requested'" and contractor "'shall have full responsibility and obligation to keep full and accurate records of all costs and expenses to satisfy tax laws and [o]wner'" (emphasis omitted)).

Although it appears the Voglers were deeply dissatisfied with their communication with Shelton and did not want to pay prospectively for work not yet performed, the record does not show that Shelton breached any term of the contract. A managing partner in Shelton testified that after the Voglers questioned the initial downpayment, the parties "talked through that, and then additional money was paid out" to "get everybody started." Although it would have been helpful to all parties and to the court if Shelton had provided periodic detailed invoices, it appears from the record that the parties had periodic conversations about the costs which, if believed, were sufficient for the district court to conclude that Shelton's obligations under the contract had been met when it requested draw payments.

Nor does the record show that Shelton breached a duty to keep costs reasonable and proper. It is undisputed that the Voglers, consistent with a cost-plus contract, elected for several changes or upgrades from the initial build plan. Among other aesthetic changes, a wall was moved 2 feet back on the back of the house, and windows, doors, a fireplace, and angled walls were added, increasing the project costs. Although the Voglers raised concerns at trial and on appeal that the project costs would have been unreasonable and improper, the evidence, if believed, was generally consistent with the conclusion that cost overruns were explained by the items added by the Voglers and the necessity of the situation "as is" and that the overruns

were not a failure by Shelton to keep costs reasonable. At trial, a managing partner in Shelton testified that if Shelton had been allowed to finish and the Voglers had followed the allowances, Shelton could have brought the contract in at $282,000 and on time. The district court, having heard the evidence and reviewed the documentation in the record, found that the Voglers breached their contract with Shelton and awarded damages to Shelton and its subcontractors. Where credible evidence is in conflict, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994). We find no merit to this assignment of error.

*Goes' Construction Lien.*

The court ordered that Goes was to receive $26,678. The Voglers claim that the court erred in making an award to Goes. The Voglers contend that Goes is not entitled to recover the amount sought in its lien because the Voglers are a "[p]rotected party" contracting owner under § 52-129. Pursuant to Neb. Rev. Stat. § 52-136 (Reissue 2010), lien liability is limited to the difference between the "prime contract price" less payments properly made thereon. However, under Neb. Rev. Stat. § 52-127(2) (Reissue 2010), the "[c]ontract price" is defined, in pertinent part, as "the amount agreed upon by the contracting parties for performing services and furnishing materials covered by the contract, increased or diminished by the price of change orders or extras." The Voglers' argument and claim that it has already paid the prime contract price is not supported by the record, and we reject this assignment of error.

Eric Vogler testified that he had paid $203,485 on the contract with Shelton, but the contract provided for $282,000 even before the cost of changes and extras were added. The Voglers' payments to other entities as part of their project did not reduce their contract liability to Shelton under the contract. The

Voglers remain obligated to Goes and the other parties who perfected liens for the unpaid part of their contract, as ordered by the district court. See § 52-136.

## CONCLUSION

We determine that the district court did not err when it found that the contract was a cost-plus contract and that the Voglers breached their contract with Shelton when they failed to pay draws required under the contract. We conclude that Shelton met its obligations under the contract to receive draw payments for materials and to pay subcontractors and that Shelton did not fail to ensure costs were reasonable and proper under the circumstances. Any remaining assignments of error not summarized above have been considered and are without merit. The orders and judgments of the district court are affirmed with respect to all parties and claims.

Affirmed.